**BURSOR & FISHER, P.A.**
Neal J. Deckant (State Bar No. 322946)
Sean L. Litteral (State Bar No. 331985)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: ndeckant@bursor.com
        slitteral@bursor.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEMNAIKA FLORES, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>          v.<br><br>PHILIPPINE AIRLINES and PAL HOLDINGS, INC.<br><br>                    Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br><u>**JURY TRIAL DEMANDED**</u> |

Plaintiff Gemnaika Flores ("Plaintiff") brings this action on behalf of herself and all others similarly situated against Philippine Airlines, Inc. and PAL Holdings, Inc. (collectively, "Defendants" or "PAL").  The allegations here are based on personal knowledge as to Plaintiff's own conduct and are made on information and belief as to all other matters based on investigation by counsel.

**NATURE OF THE ACTION**

1.     This is a class action lawsuit regarding Defendant Philippine Airlines' failure to provide full refunds to customers whose flights were cancelled or were subject to a significant schedule change and not refunded as a result of COVID-19 ("coronavirus").

2.     Given the outbreak of the coronavirus, PAL has cancelled a vast percentage of its international and U.S. flights.  However, PAL has refused to issue refunds for flights that it cancelled or significantly altered.  PAL's inexplicable and continuous withholding of passengers' refunds stands in direct contravention of its Contract of Carriage as well as other representations made to passengers, which are set out more fully below.

3.     PAL's treatment of Plaintiff is no exception.  On December 17, 2019, Plaintiff purchased two roundtrip tickets departing on April 22, 2020, from San Francisco to Manila, the Philippines for $1,356.08.  However, on April 5, 2020, PAL cancelled Plaintiff's flights.  Plaintiff immediately attempted to secure a voucher.  But after realizing that she would be unable to fly during the COVID-19 pandemic, Plaintiff requested that PAL issue her a refund.  On July 30, 2020, Plaintiff received a confirmation email from PAL representative, Cecilia A. Murillo, that her refund request had been filed and that she should "allow 3-6 months processing."

4.     After nearly six months, Plaintiff emailed Ms. Murillo on December 10, 2020 to request the status of her refund.  Ms. Murillo responded on December 10, 2020 stating that "[a]ll refunds are being handled by our head office" and that Plaintiff should allow for additional processing.

5.     On December 29, 2020, Plaintiff sent an additional email to Ms. Murillo requesting an update.  Ms. Murillo responded on December 30, 2021, stating that she "sent follow up today" and that Plaintiff should continue to be patient.

6.     On January 18, 2021, Plaintiff sent another email requesting the status of her refund. Ms. Murillo responded, simply stating that she would "follow up today."  But Plaintiff did not receive a follow up.  Instead, on March 3, 2021, Plaintiff emailed asking for another update.  On March 9, 2021, Ms. Murillo responded that "all refunds are being handled by our head office." Plaintiff called on March 14, 2021, March 16, 2021, twice on March 22, 2021, on April 6, 2021, and twice in June 2021, and twice in July 2021.  Each time Plaintiff was placed on hold, forcing Plaintiff to wait approximately one hour before her concerns were considered.  However, none of these efforts were successful.

7.     All told, Plaintiff has waited for her refund for more than 12 months.  She sent a total of 8 emails and called 10 times.  PAL's representations to Plaintiff never materialized. Instead, PAL led Plaintiff, like others similar situated, through a test of exhaustion.  As this Complaint will demonstrate, PAL breached both its Contract of Carriage as well as subsequent representations to its consumers who desperately sought a refund amidst a global pandemic and economic recession.  In doing so, PAL inexplicably refused to issue refunds for Plaintiff and Class Members.

## PARTIES

8.     Plaintiff Gemnaika Flores is, and at all times relevant to this action has been, a citizen of California and a resident of Union City, California.

9.     Defendant Philippine Airlines, Inc. is a business organized under the laws of the Philippines and maintains its Executive Office at 8/F PNB Financial Center, Macapagal Avenue, in Pasay City, National Capital Region 1307, the Philippines.  Defendant also maintains its principal place of business in the U.S. at 1350 Bayshore Highway, Suite 150, Burlingame, California 94010.

10.     Defendant PAL Holdings, Inc. is a holding company and parent of Philippine Airlines, Inc.  PAL Holdings is organized under the laws of the Philippines and maintains its Executive Office at 7th Floor Allied Bank Center, 6754 Ayala Avenue, Makati 1200, the Philippines.  PAL Holdings is also organized under the laws of the State of Delaware as File Number 3329654.  PAL Holdings maintains a Registered Agent, called Delaware Corporate Agents, Inc., located at 4405 Tennyson Road, Wilmington, Delaware, 19802.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendants.

12.     This Court has personal jurisdiction over Defendants because Defendants purposefully availed themselves of this forum by conducting substantial business within California such that Defendants have significant, continuous, and pervasive contacts with the State of California.  Defendant Philippine Airlines also operates multiple offices throughout California and is registered with the California Secretary of State as maintaining an office located at 1350 Bayshore Highway, Suite 150, Burlingame, California 94010.

13.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendants do substantial business in this District and a substantial part of the events giving rise to Plaintiff's claims took place within this District, as Plaintiff Flores purchased her ticket in this District and resides in this District.  And as noted above, Defendant Philippine Airlines is registered with the State of California as operating an office in Burlingame, California.

## FACTUAL ALLEGATIONS

### *PAL's Contract of Carriage*

14.     PAL's refusal to refund customers violates its Contract of Carriage ("COC"), attached as **Exhibit A**.[1]  Specifically, this dispute is governed by Article 10 of PAL's COC.  Article 10, Section 1 provides that the "[r]efund of a Ticket or any of its unused portion . . . shall be subject to these Conditions of Carriage."

15.     Article 10, Section 2, entitled "When To File For Refund And To Whom Refund Will Be Made," sets out many of the terms relevant to this action.  The relevant portion provides that "[r]efund of a Ticket or any of its unused portion, including taxes, fees, and or any other amount collected on behalf of any third party, shall be applied with PAL within the period of the

---

[1] The Contract of Carriage attached to this complaint was in place at the time Plaintiff purchased her tickets.

validity of the Ticket and thirty (30) days thereafter." Further, "[e]xcept as provided in this Article, refund shall be made either to the Passenger, or to the person who has paid for the Ticket upon presentation of satisfactory proof of entitlement to the refund."

16.     Section 2 further provides that "[a] refund made to anyone holding himself or herself out as a person to whom refund may be made in terms of (a) above shall be deemed a proper refund and shall discharge PAL from liability and any further claim for refund." Additionally, "[i]f the credit card is not under Passenger's account name, Passenger warrants that he/she and the credit card holder both agreed that: 1) either the Passenger or credit card holder may apply for online refund; and 2) the refund will automatically be charged back to the credit card account originally used."

17.     These terms are complemented by Article 10, Section 3 entitled "Involuntary Refund" which states that "[i]f PAL cancels a flight, or fails to operate a flight reasonably according to schedule, or fails to stop at a point to which you were destined or ticketed to Stopover, or is unable to provide previously confirmed space, the amount of the refund shall be subject to these Conditions of Carriage" as well as "PAL's Tariffs, and applicable laws, rules, and government regulations."

18.     Article 10, Section 4 entitled "Voluntary Refunds" further provides that "[i]f you are entitled to a refund of your Ticket or any of its unused portion, including taxes, fees, or any other amount collected for or on behalf of any third party, for reasons other than those set out in Section 3 of this Article, the amount of the refund shall be in accordance with PAL's Tariffs."

19.     As the terms of the COC make clear, refunds are to be issued to consumers for both voluntary and involuntary cancellations.

### DOT Guidance Supplies Reasonable Terms

20.     The COC does not reference the length of time in which PAL shall issue refunds to consumers. But as described below, reasonable terms should be supplied in accordance with well-established principles governing contract interpretation. In supplying reasonable terms, one area to consider is the U.S. Department of Transportation's ("DOT") Enforcement Notice on related matters.

21.   The DOT has declared that "in the context of the 2019 Novel Coronavirus (COVID-19) public health emergency, that U.S. and foreign airlines **remain obligated to provide a prompt refund to passengers** for flights to, within, or from the United States when the carrier cancels the passenger's scheduled flight or makes a significant schedule change and the passenger chooses not to accept the alternative offered by the carrier."[2]

22.   The DOT further counsels that "[t]he obligation of airlines to provide refunds, including the ticket price and any optional fee charged for services a passenger is unable to use, does not cease when the flight disruptions are outside of the carrier's control (e.g., a result of government restrictions)."

23.   On May 12, 2020, the DOT issued a Second Enforcement Notice, stating in pertinent part that "airlines have an obligation to provide a refund to a ticketed passenger when the carrier cancels or significantly changes the passenger's flight, and the passenger chooses not to accept an alternative offered by the carrier."[3]  The DOT explained that "[f]or airlines, 'prompt' is defined as being within **7 business days** if a passenger paid by credit card, and **within 20 days** if a passenger paid by cash or check."[4]

24.   The DOT Enforcement Notices are not merely guidance documents but are based on provision of the Code of Federal Regulations, which are cited explicitly in the DOT Second Enforcement Notice.

25.   For the sake of clarity, it is important to reiterate that the DOT's guidance is offered here for the sole purpose of considering omitted terms such as the length of time PAL consumers must wait for a refund.  Courts have made clear that plaintiffs can sustain causes of action for

---

[2] DEP'T OF TRANSP., U.S. DEPARTMENT OF TRANSPORTATION ISSUES ENFORCEMENT NOTICE CLARIFYING AIR CARRIER REFUND REQUIREMENTS, GIVEN THE IMPACT OF COVID-19 (Apr. 3, 2020),      https://www/transportation.gov/briefing-room/us-department-transporation-issues-enforcement-notice-clarifying-air-carrier-refund (hereinafter "DOT Notice") (emphasis added).
[3] DEP'T OF TRANSP., FREQUENTLY ASKED QUESTIONS REGARDING AIRLINE TICKET REFUNDS GIVEN THE UNPRECEDENTED IMPACT OF THE COVID-19 PUBLIC HEALTH EMERGENCY ON AIR TRAVEL 1 (May 12, 2020), https://www.transportation.gov/sites/dot.gov/files/2020-05/Refunds-%20Second%20Enforcement%20Notice%20FINAL%20%28May%2012%202020%29.pdf (hereinafter "DOT SECOND NOTICE").
[4] *Id.* (emphasis added).

breach of contract in the absence of the DOT's guidance.[5]  As the court recently noted in *Herrera v. Cathay Pac. Airways Ltd.*, "implicit in the Supreme Court's opinion in *Wolens*[6] is that courts would remain free to use general principles of contract law to interpret parties' agreements without running afoul of the [Airline Deregulation Act]."  No. 20-CV-03019-JCS, 2021 WL 673448 (N.D. Cal. Feb. 21, 2021).  In *Herrera*, the court also cited *Cox v. Spirit Airlines, Inc.*, where it was determined that "[u]nder *Wolens*, routine contract claims may proceed, which necessarily required employing tools of contractual interpretation." *Id.* at 10 (citing 786 F. App'x at 285).  The DOT's guidance is supplied for this purpose.

### *PAL's Representations To Consumers*

26.     Another area to consider for supplying reasonable terms is PAL's various representations to its consumers.  PAL's refusal to issue refunds runs contrary to several representations made to passengers in connection with coronavirus-related cancellations.

27.     A consumer visiting PAL's website at the height of the pandemic would have encountered multiple representations informing them that "passengers whose flights are affected by COVID-19 cancellations . . . may avail of the following options even after the enhanced community quarantine period or after your flight schedule:"

1. Rebook or reroute to a later date:
   a. Unlimited (no rebooking fee)
   b. For first rebooking: No fare difference on the same cabin class.  Travel date must be on or before November 30, 2020 or ticket validity, whichever comes first (with blackout dates for United States and Canada).
   c. For rebookings: Ticket must be on the original booking class and travel date must be within original ticket validity.  Fare difference, taxes, and no show fees may be collected.
   d. For rerouting, fare difference and taxes may also be collected.

---

[5] *See Bugarin v. All Nippon Airways Co.*, No. 20-CV-03341-BLF, 2021 WL 175940, at *9 (N.D. Cal. Jan. 19, 2021) ("The Contract Claim is Not Preempted"); *Herrera v. Cathay Pac. Airways Ltd.*, No. 20-CV-03019-JCS, 2021 WL 673448 (N.D. Cal. Feb. 21, 2021) ("Implicit in the Supreme Court's opinion in Wolens is that courts would remain free to use general principles of contract law to interpret parties' agreements without running afoul of the ADA."); Ide v. Brit. Airways PLC, No. 20-CV-3542 (JMF), 2021 WL 1164307, at *6 (S.D.N.Y. Mar. 26, 2021) ("In short, applying well-established principles of contract law, the Court concludes that the . . . Plaintiffs bring a plausible breach-of-contract claim based on British Airway's failure to provide them with refunds.").

[6] *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 232, 115 S. Ct. 817, 825, 130 L. Ed. 2d 715 (1995).

2. Convert the unused value of their ticket to a voucher for future use.  For involuntary changes, the Travel Voucher is equivalent to the unused value of your ticket plus an additional 10% of the unused base fare.  This benefit is available only among passengers who have not made previous changes to their booking.  The additional 10% value is non-refundable.  Click here to know more about Travel Voucher.

3. Refund their tickets without penalties.  Due to the high volume of requests and limitations from the Enhanced Community Quarantine in the Philippines, there may be some delays in processing of refunds.  For tickets purchased using credit card, Alipay, Gcash, Paypal, and Wechat Pay, ***the amount will be credited back to the account used at around 90 banking days (or an average of 2-3 billing cycles) from the date of processing***.

(emphasis added).

28.      Consumers also would have seen PAL representations informing them that they have "[n]o need to worry" and that they can secure their refunds from "the comfort and safety of [their] own home."  One such representations is as follows:



///

///

29.     In accordance with PAL's representation, a consumer who wished to submit their rebooking or to request a travel voucher or refund would scan the QR code or visit the hyperlink as set out by PAL.  The consumer would then proceed to the following page:

## myPAL Request Hub

No need to worry. Transact from home safely.

To provide passengers with flexible servicing options, we are pleased to introduce myPAL Request Hub. Through this secure online form, you can request for the following transactions at the comfort and safety of your own home:
- Convert your ticket to a Travel Voucher valid for one year
- Rebook to a later flight after the Community Quarantine Period.
- Request for a refund

We also enhanced some of our policies to give flexibility for all passengers travelling on March 15 to May 15, 2020 and passengers affected by COVID-19 cancellations or travel ban:
- Receive 10% bonus when you convert your ticket to a Travel Voucher.
- Get maximum flexibility as we now allow unlimited rebooking.
*terms and conditions apply

You can use this online facility in 3 easy steps:
- Fill up the form
- Click SUBMIT
- Receive a confirmation via email

Additional Information:
1.  For tickets issued by our partner travel agents, requests on booking changes must be made through the issuing travel agent.
2.  myPAL Request Hub can assist requests for changes to confirmed bookings on Philippine Airlines flights which were made through the PAL Website, PAL Mobile App, Ticket Office, or 24/7 Reservations Hotline.

///

///

///

///

30.     As set out in PAL's myPAL Request Hub information sheet, consumers who desired a refund could complete their request following "3 easy steps: fill up the form[,] click SUBMIT[,] and receive a confirmation via email."

31.     The form referred to above is as follows:

32.   Once the consumer completed this form, they would then proceed to the following page setting out their options:

myPAL Request Hub

\* Required

## Options for Booking Changes

REBOOK
  o For all passengers traveling on March 15 to May 15 and passengers affected by COVID-19 Cancellations or Travel Ban (February 2 to May 31)
    • Unlimited (no rebooking fee)
    • For first rebooking: No fare difference on the same cabin class. Travel date must be on or before November 30, 2020 or ticket validity, whichever comes first \*with blackout dates
    • For succeeding rebookings: Ticket must be on the original booking class and travel date must be within original ticket validity. Fare difference, taxes, and no show fees may be collected.
    • For rerouting, fare difference and taxes may be collected

  o For Voluntary Changes (flights not affected by cancellations or travel bans, travelling on May 16, 2020 onwards, must be ticketed on or before March 31, 2020 and request must be filed 7 days before departure)
    • One time rebooking without penalties
    • Fare Difference and Taxes may be collected
    • Travel within ticket validity
    • Request must be submitted 7 days before flight schedule

Note: Blackout dates (United States /Canada to Manila) June 15 to July 31 outbound (Manila to United States /Canada) July 15 to Sep 15.

CONVERT TO TRAVEL VOUCHER
  o  The travel voucher can be used as partial or full payment to any PAL flight.
  o  The travel voucher can be exchanged to a ticket or Travel Extras within 1 year from issuance.
  o  If you are affected by an involuntary change, the Travel Voucher is equivalent to the unused value of your ticket plus an additional 10% of the unused base fare. This benefit is available only among passengers who have not made previous changes to their booking. The additional 10% value is non-refundable.
  o  Your Travel Voucher is refundable. Otherwise, the refundability of your Travel Voucher (full or partial) will be subject to the fare rules and conditions of your ticket.

REFUND
  o No penalties for:
    • All passengers on March 15 to May 15, 2020
    • Passengers affected by COVID-19 Cancellations or travel bans
  o Due to the volume of requests, processing of refunds may take 3 to 4 months from lifting of enhanced community quarantine. We request for your understanding.

8. Please select your booking change option \*

Select your answer                                          ⌄

///

///

///

33.     Under the option for refunds, PAL represents that "processing of refunds may take 3 to 4 months from lifting of enhanced community quarantine."  This is distinct from PAL's previous representation as set out above that "the amount will be credited back to the account used at around 90 banking days (or an average of 2-3 billing cycles) from the date of processing."

34.     A consumer who selected the refund option would then proceed to the following page:

myPAL Request Hub

* Required

### Refund Option

Before you hit that submit button, we would just like to let you know that processing of refunds through myPAL Request Hub will take:

- 3 months or 3 billing cycles for credit card, depending on your bank's turnaround times and
- 3 to 5 months for cash refunds, depending on the lifting date of the community quarantine period

You can also switch to a Travel Voucher

- The travel voucher can be used as partial or full payment to any PAL flight.
- The travel voucher can be exchanged to a ticket or Travel Extras within 1 year from issuance.
- If you are affected by an involuntary change, you will receive the unused value of your ticket plus an additional 10% of the unused base fare. This benefit is available only among passengers who have not made previous changes to their booking. The additional 10% value is non-refundable.
- Your Travel Voucher is refundable. Otherwise, the refundability of your Travel Voucher (full or partial) will be subject to the fare rules and conditions of your ticket.

9. Please choose an option *

◯ Yes, I want to switch to Travel Voucher.

◯ No, I want to continue with my refund request. I agree with the said turnaround times.

| Back | Next |

Never give out your password. Report abuse

///

///

35.    PAL again represents that "the processing of refunds through myPAL Request Hub will take: 3 months or 3 billing cycles for credit card, depending on your bank's turnaround times." PAL also informs consumers that their refund may take "3 to 5 months for cash refunds."

36.    Once consumers completed their refund request, PAL then sent them an email substantially similar to the following:

Dear Sir/Ma'am,

This is to acknowledge your request to refund ticket number ▮▮▮▮▮, under booking reference ▮▮▮▮▮, due to COVID-19.

We have already processed the refund and have assigned refund reference number ▮▮▮▮▮.

Due to the high volume of requests and limitations from the enhanced community quarantine in the Philippines, there may be some delays in the processing of refunds. Please allow 5 months from the date the refund was processed (or an average of 5 billing cycles) for the amount to be credited back to the account used.

We ask for your patience and understanding.

Sincerely,

Relyn
**Philippine Airlines**

By providing your Personal Information, you have read PAL's **Data Privacy Policy**, which may be viewed at **https://www.philippineairlines.com/AboutUs/LegalNotices/ Dislcaimer**, and understood the purposes for collecting such Personal Information, the parties to whom your Personal Information may be shared, our security measures, and most importantly, your rights as Data Subjects under the Data Privacy Act. You likewise give consent to the collection, use, monitoring, recording and disclosure or transfer of your Personal Information in accordance with PAL's Data Privacy Policy.

37.    At this point, PAL represents for the first time that consumers should allow a minimum of five months from the date the refund was processed for the refund to be credited back to the account used.

38.     However, as Plaintiff's experience and the consumer complaints below demonstrate, PAL has not honored the terms of the COC or any of its subsequent representations to consumers. In many cases, PAL consumers have waited for a year or more in securing their refunds.

### Consumer Complaints Regarding PAL's Refusal To Honor Its Refund Policy

39.     Numerous consumer reports and complaints demonstrate that any condition precedent for obtaining a refund has been excused, and that PAL has not honored its refund policy. On March 17, 2020, one consumer, for example, submitted a report to the Better Business Bureau ("BBB") concerning PAL's lack of responsiveness.  The consumer stated that "Philippine Airlines USA customer service line . . . is non[-]responsive amid [C]void[-]19."  The consumer reported that "when I try calling Philippine Airlines customer service . . . the whole day, night of [March 12, 2020] and morning of [March 13, 2020], and many times the calls disconnect or [are] busy when you call."  The consumer stated that "if you get connected you are placed on hold for hours with no answer or assistance."  The consumer even tried an alternative method of reaching the Airline: "At one point, I tr[ied] the other option called Mabuhay Miles on the same customer service [number and] a customer service person answer[s] right away[.]  [H]owever, they won't help . . . they will transfer you to the booking line option that place[s] you on hold for hours with no response."  PAL was informed of this complaint and although PAL responded to the complaints directly preceding and succeeding this complaint, PAL never responded to this consumer's complaint.

40.     Another consumer reported to the BBB on May 20, 2020 that the Philippine Airlines "just sent me an email informing me that the flight was cancelled.  I tried to rebook to the next available flight . . . but was asked to pay for a business class ticket, which according to them was the last available seat."  The consumer stated that "I purchased the ticket just to be able to fly back home because my husband was rushed to the hospital for congestive heart failure."  The consumer reported that they had been unable to secure a refund.  PLA was informed of this complaint and responded on July 27, 2020.

41.     Another consumer reported to the BBB on May 21, 2021 that Philippine Airlines "says they refunded our money in January.  We never got the money.  The bank never got the money.  [Philippine Airlines] never offers evidence of refund."  The consumer indicated that they

contacted the Airline on multiple occasions but that instead of issuing a refund the Airline issued "a litany of hollow apologies while they continue[d] to keep my money."  PAL was informed of this complaint and although PAL responded to the complaints directly preceding and succeeding this complaint, PAL never responded to this consumer's complaint.

42.     Another consumer reported to the BBB on August 6, 2020 that "my wife and I purchased airfare and hotel with PAL" but that "PAL cancelled our trip and never refunded the money."  The consumer stated that "we feel that we have given [PAL] ample time to refund our money and to this day we have not received any wire transfer, ACH, check or any other forms of reimbursement in any of our accounts."  The consumer then proceeded to set out the relevant timeline in support of these assertions.  The consumer stated that on "March 2020, [he and his wife's] flights were cancelled;" that on "March 28, 2020 [he received an] email refund acknowledgement sent by PAL;" that on "May 9, 2020 [he] requested [an] update to refund, no response;" that on "May 19, 2020 [he] requested [a] status [update];" that on "May 20, 2020 [he] filed [a] claim with Chase;" that on "May 21[, 2020 the Airline] responded with still no direct answer as to where the refund was;" that on "July 10, 2020, Chase denied claim" because the Airline "responded and said they issued a refund;" and that on "July 11, 2020 [he] still ha[d] not received any refund."  The consumer concluded that "it is very frustrating based off the first refund email that the refund would be received after 30 days, then to call and be told it will take 2-3 months and now they are saying 5-7 months."  PAL was informed of this complaint and responded on August 9, 2020.

43.     Another consumer reported to the BBB on August 20, 2020 that "[m]y flight was cancelled by the airline and I was told that I could reschedule or request a refund."  The consumer wrote that they "chose to get a refund [on] May 11, 2020."  The consumer reported that "I was told at that time that it would take 4-6 weeks for my refund.  It has now been 3 months since my first attempt and I still have not received a refund."  The consumer further noted that "I called today . . . and spoke with a representative . . . who now tells me it will take 5 months from June 12, 2020 to get my refund."  The consumer concluded that "this is not fair.  I am being charged interest fees from my credit card everyday because they have not refunded my money back to the card like they

say they were going to do." PAL was informed of this complaint and responded on August 23, 2020.

44.     Another consumer reported to the BBB on September 2, 2020 that PAL "has failed to refund my flight ticket within a reasonable time frame despite multiple follow-ups and cancelled flight by them." The consumer stated that "I have been trying to receive a refund for two flight booking . . . I made directly through Philippine Airlines since last March." The consumer wrote that "[w]hen all were cancelled by them due to COVID, I promptly followed their instructions in late March 2020, patiently, and consistently followed-up to ensure I receive my refund." However, "after two months of no response, I received a notice that my refund was being processed on May 29, 2020 and that it would take 90-days from this date . . . . The 90-days have passed and I had to follow-up multiple times against and get some response that it will not take 5 months." The consumer stated that "that is completely unacceptable and an unreasonable time to withhold a refund especially during very difficult financial times."

45.     Importantly, the consumer rhetorically asked, "how can I be confident that in 5 months they won't just tack on another few months until I give up on getting my refund?" Moreover, the consumer stated that "I am entitled to my money, as they did not provide the services those flight tickets paid for. They are withholding funds that are not theirs to keep." The consumer concluded that "It is difficult for me to understand why it would take that long, when another airline I booked with in March was able to refund my money in one month with no follow-up required." PAL was informed of this complaint and responded on September 16, 2020.

46.     Another consumer reported to the BBB on September 3, 2020 that "a refund was requested for plane tickets I cancelled. Per the airline, refund was processed on [April 28, 2020]. As of today . . . no refund received." The consumer stated that "I purchased 2 business class round trip tickets . . . I requested tickets to be cancelled and refunded due to global pandemic." The consumer reported that "after multiple phone calls, Philippine Airlines finally confirmed cancellation on [April 29, 2020] and that [a refund would be issued in] 2-3 billing cycles." But the "refund has not been received." The consumer wrote that "after speaking to a customer service rep at Philippine Airlines via phone today . . . they said refund should be expected in October or

November 2020.  This timeframe is unreasonable.  This is a significant amount of money.  Philippine Airlines needs to return the money."  PAL was informed of this complaint and responded on September 29, 2020.

47.     Another consumer reported to the BBB on September 21, 2020 that a "refund . . . was promised on [March 1, 2020] to be processed within 30 business days.  It has been over 6 months now without a refund."  The consumer wrote that "I was told to allow 30 business days for [the refund] to process.  I have emailed PAL multiple times respectfully inquiring about the status of the refund, and each time they say 'please wait one more month.'  It has been over 6 months now and the refund still have not been received."  PAL was informed of this complaint and although PAL responded to the consumer's complaint immediately preceding and immediately succeeding this complaint, PAL did not respond to this complaint.

48.     Another consumer wrote to the BBB on September 21, 2020 that "we cancelled our flight to [the] Philippines due to [COVID-19]" and "we rescheduled [the flight] for June 2020."  However, "the airline changed the travel date without notifying us."  Consequently, "customer service gave us [the] option to hold or refund since the airline changed the flight we ha[d] a choice to cancel our travel and get full refund or change the travel date with no penalty."  The consumer stated that "we chose to get a refund on March 11, 2020 due to Covid 19."  But the consumer concluded that the refund that PAL ultimately issued was only a partial refund.  PAL was informed of this complaint and responded on October 8, 2020.

49.     Another consumer wrote to the BB on September 23, 2020 that "[m]y flight was cancelled due to COVID19.  I requested a refund in April [and] it is now September and I have yet to receive my refund."  The consumer wrote that "I purchased a roundtrip ticket for my son and I on [March 3, 2020] scheduled to fly out in May to the Philippines."  But "the flight was cancelled and rescheduled multiple times by Philippine Airlines due to COVID19."  The consumer stated that "I decided to request . . . a refund and spoke with a customer service representative . . . I received an email from Philippine Airlines dated [May 6, 2020] acknowledging the request for refund for our tickets and that it is being processed."  The consumer that the "email stated that I will receive my refund around 90 banking days or an average of 2-3 billing cycles from the date of

processing.  On [August 4, 2020] I emailed PAL . . . to follow up on my refund.  I received an Auto response letting me know that due to high volume of emails there is a delay in response."  The consumer noted, however, that "to this day I still have not received a response to my email.  [I]n the beginning of September I called PAL customer service to follow up on my refund and was told that I have not reached my 90 days and to wait.  I had the customer service rep[resentative] tell me when my 90 days waiting period would end and I was told [September 14, 2020]."  The consumer stated that "I called PAL customer service again on [September 14, 2020] and was told that I now had to wait at least 5 billing cycles.  I requested to speak to the Supervisor . . . [who] told me that he would send a request to expedite my refund and for me to wait 24-48 hours . . . I have waited 48 hours and still no refund."  PAL was informed of this complaint and responded on October 20, 2020.

50.      Another consumer reported to the BBB on September 23, 2020, asking "where is our refund???"  The consumer wrote that "we have been patiently waiting to get a full refund on our tickets.  We cancelled our flight due to the current pandemic rightfully so since Philippine Airlines gave that option."  The consumer reported that PAL "said 2-3 billing cycles but it has been way beyond that.  We have already been in contact with their customer service by phone and email to no avail.  In fact one rep[resentative] would say it was processed on May 28[, 2020] while another would say June[, 2020]."  The consumer rhetorically asked "what is going on????!!!!!" And the consumer concluded that "this is getting ridiculous!!!!  We will exhaust all avenues to expose these corrupt practices!!!!"  PAL was informed of this complaint and responded on October 9, 2020.

51.      Another consumer reported to the BBB on October 5, 2020 that "I purchased tickets for my family in March 2020 to go to the Philippines in April 2020.  The airline cancelled our flight due to COVID-19.  I requested a refund and was told the refunds were done on April 16, 2020."  The consumer reported that "it has now been over 5 months and I have yet to receive a refund to my credit card.  I have been going back and forth . . . about the funds for months now.  I have called and emailed . . . a number of times and they have yet to even give me a refund status."  The consumer noted that "I have asked for a confirmation that the refund has been done and have

received no replies.  Please help."  PAL was informed of this complaint and responded on October 6, 2020.

52.  Another consumer wrote to the BBB on October 12, 2020 that "5 months after the airline cancelled our flight, they haven't issue[d] us a refund.  Flight scheduled for May 21[, 2020] to June 16[, 2021] . . . was cancelled by the airline and [PAL] has not refunded me."  The consumer then concluded "please refund my money."  PAL was informed of this complaint and responded on October 23, 2020.

53.  Another consumer reported to the BBB on November 3, 2020 that "It [has] been 7 months since [PAL] cancelled [our] flights . . . I decided to refund my ticket and 7 months after they still have not returned my money."  The consumer wrote that "I am just [a] minimum wage earner living paycheck to paycheck.  Suffering from stress and depression because of what they did."  PAL was informed of this complaint and responded on November 4, 2020.

54.  Another consumer reported to the BBB on November 6, 2020 that PAL "cancelled [our] flight Aug[ust] 8.  Called back [on] Oct[ober] 29[, 2020] . . . [the] agent assured it was cancelled and I was to receive an email confirmation in 7-10 days and a refund in 5 months."  However, the consumer wrote that "I called back October 29[, 2020] after months of nothing from the company and they informed me they had not processed my refund and are now stating it will be 7-10 days from the day I receive[d] the email cancellation and 5 months from then to re[ceive] the refund."  PAL was informed of this complaint and responded on November 10, 2020.

55.  Another consumer wrote to the BBB on November 23, 2020 that "I haven't received my refund from Philippine Airlines.  I recently booked a flight [with the] Philippine Airlines.  But because of the pandemic, it had to be cancelled.  The airline said that it may take 150 days at the most from the refund initiation date (May 21, 2020)."  The consumer, however, reported that "It is more than 150 days now.  I'm forwarding their repetitive reply [to] my email inquiries."  The consumer then quoted PAL's email: "'Dear . . ., We sincerely apologize for the long processing time that you experience.  The refund process may take up to 5 months . . . from the time the refund was initiated . . . Your bank will be notified once the amount has been transmitted."  PAL was informed of this complaint and although PAL responded to the consumer's complaint

immediately preceding and immediately succeeding this complaint, PAL did not respond to this complaint.

56.     Another consumer reported to the BBB on December 3, 2020 that "[our] airline ticket was process[ed] 7 months ago until now still did not receive[] the refund."  The consumer stated that they "tr[ied] to email and call but [to] no avail, people are frustrated."  PAL was informed of this complaint and responded on December 13, 2020.

57.     Another consumer wrote to the BBB on December 8, 2020 that "a flight refund was requested due to flight cancellation . . . .  A refund was promised within 90 days.  No refund received."  The consumer reported that they "promptly requested" a refund and was told "to expect [the] refund within 2-3 billing cycles / 90 business days."  The consumer stated that on "August 24, 2020, [I] sent [an] email . . . with [the] refund reference number . . . informing them [that] 90 banking days have elapsed."  However, when PAL responded that the refund request "is being processed and to expect an[] ADDITIONAL 90 banking days / 2-3 billing cycles before receiving the refund."  The consumer stated that they sent an additional email on October 19, 2020 and again on November 26, 2020 but "no refund received."  But instead of issuing the refund as promised, PAL "state[d] they are still processing the request.  Escalated request and spoke with . . . supervisor . . . who states [the refund] is still being processed by the refunds department.  I had requested to speak with the refunds department however they state it is internal and they cannot transfer the call."  The consumer concluded that PAL's conduct "is illegal and unethical."  PAL was informed of this complaint and responded on December 21, 2020.

58.     Another consumer reported to the BBB on December 17, 2020 that "I am a disabled vet[eran] living on a fixed income.  I purchased a business class ticket so that I could lay down because of medical issues on such a long flight."  The consumer wrote that "I . . . have not received my voucher refund as promised."  The consumer stated that the Philippine Airlines "changed the day of our flight" and "I cancelled [my ticket] because the operator I spoke with said I could get a voucher refund in 7-15 business days.  I thought I could easily rebook another flight."  But this was not the case.  PAL was informed of this complaint and responded on December 29, 2020.

59.     Another consumer wrote to the BBB on December 17, 2020 that "I have not received my refund yet from Philippine Airlines!  My dad ha[d] a flight April 8-28[, 2020] to the Philippines and due to COVID-19 PAL cancelled his flight March 23[, 2020]."  The consumer reported that "when PAL cancelled [in] March, I remember I waited in the line for 3 long hours just to let PAL know that I wanted a refund for that ticket.  The agent who helped me, told me that they will be processed already.  And it will take 3 billing cycles or 90 banking days to get the refund."  The consumer reported that they received an email from PAL on April 5, 2020 informing them that "if you convert your ticket to a Travel Voucher you will receive the full unused value of your ticket plus an additional 10% of the value."  The consumer wrote "I did not want that.  I spoke to them clearly that I was a refund!  There was an option for me at the end of this email to reconfirm I want my refund."  The consumer stated that on April 22, 2020 "I got another email [from PAL] . . . asking the same thing!  I [responded] that I have already confirmed that I wanted a refund!"  The next day the consumer received a reply email stating that "We will process the refund and it will be credit back to your credit card."  The consumer stated that they follow up with PAL on September 16, 2020 but received a response stating that "upon checking on the record, the refund has been processed on our end last May 18, 2020" but that "there may be some delay in the transmittal of the refunds.  The amount will be credited back to the account used in the booking at around 150 banking days."  The consumer wrote "Now they're saying '150 banking days.' What type of business would make their consumer expect 90-banking days and would change to 150 banking days?"

60.     The consumer reported that they followed up with PAL on October 6, 2020 and received a similar response asking for the consumer's patience.  The consumer then followed up on October 27, 2020 and received another similar response requesting that the consumer remain patient.  The consumer reported that "[t]his is unacceptable.  See how they handle the situation.  Its December now and I have not got a refund from them aside from their unstoppable waiting cycles."  PAL was informed of this consumer's complaint and responded on December 29, 2020.

61.     Another consumer reported to the BBB on January 25, 2021 that PAL "is not refunding fare for flight cancelled by them.  I have been waiting for refund for over 6 months."

The consumer explained that "I purchased flight ticket for my daughter and me last year (2019) my flight was to be on June 2020 [but the] flight was cancelled due to COVID-19 by them [because] they could not fly on the dates purchased."  As a result, PAL "rescheduled the flight with dates provided by them.  I was told by them if I did not fly on those dates I could either get vouchers or a refund.  I chose a full refund, [and it] was indicated that [the] refund would take 90 days."  The consumer wrote that "after 90 days I still had not received a refund so I called to inquire about it and was told another 30 days would be needed for the refund.  It has been the [same] story since then."  The consumer wrote that "Now every time I call to inquire they tell me their system is being updated and no one wants to talk with me.  They place me on hold and eventually the call is disconnected.  Request to escalate to supervisor [and] they say [the] supervisor will call, so far no call received."  The consumer concluded that "they are giving the impression that they will steal my flight fare and my bank tried to contact them but they also do not respond to them."  PAL was informed of this complaint and responded on January 27, noting that "we . . . [are unable] to verify the passenger record . . . .  We also hope to be given more time to file our response."

62.     Another consumer reported to the BBB on February 23, 2021 that "my flights (wife and I) were cancelled doe to the pandemic.  I was advised multiple times I'd be refunded.  No refund still.  I've been waiting for a refund . . . but there is still no refund.  In fact, I've been told on multiple occasions that a request would be expedited and nothing happens."  The consumer wrote that PAL "ha[s] the audacity to tell me it takes 5 months to receive a refund.  Hilariously, 10 months later and still there's no refund for the cancelled flight.  At this point, I don't know what to do.  I've sent out several emails trying to get a refund with no luck."  The consumer stated that "every email has the same generic templated attached stating they are going to expedite the request.  I haven't seen any follow-up regarding any expedite submitted on my behalf."  The consumer also wrote that "Even on today's call, I advised I'd be willing to wait on the line for them to send me an email confirmation of this supposed expedited request for a refund, and again nothing happens."  The consumer concluded that "You can simply look at their Facebook page and see that there's still hundreds of people who haven't received their refund back."  PAL was informed of this complaint and responded on March 9, 2021.

63.     Another consumer wrote to the BBB on February 24, 2021 that "PAL sent me a confirmation . . . for my refund on [May 14, 2020] sa[ying] 30-60 days until refund" but "no refund yet."  The consumer explained that on April 25, 2020, "PAL sent me a[n] email saying my flight has been cancelled due to COVID-19, I then request a refund . . . [and] received a confirmation [of] cancellation . . . saying I would receive my refund around 90 banking says or 2-3 billing cycles."  The consumer stated that "on [October 14, 2020] I called them again and I wasn't able to be connected to anyone who could help . . . I still have not received my refund."  PAL was informed of this complaint and responded on March 10, 2021.

64.     Another consumer reported to the BBB on February 25, 2021 that they have been "awaiting [a] refund for over 7 months now . . . Been calling company twice a month but I get the same information.  Have talked to multiple supervisors but still no resolution.  An email was sent to me from company [on] June 2, 2020 acknowledg[ing] [the] refund within 90 banking days or 2-3 billing cycles."  The consumer stated that they sent another email to PAL "on January 14, 20201 which I haven't heard back from them yet.  I've mentioned that these are hard times [and] that I'm in need of that refund because I'm still paying my credit card company just to avoid delinquent notices . . . .  I'm exhausted calling them [and] nothing is getting resolved."  PAL was informed of this complaint and responded on March 11, 2021.

65.     Another consumer wrote to the BBB on March 1, 2021 that "[I have] been waiting for my refund for almost 10 months now.  They informed me to wait for 6 billing cycle[s] but nothing happened after the 6 billing cycles."  The consumer described that "I purchased my ticket last April 2020 but it got cancelled.  I requested a refund after that but they informed me that they didn't receive any request."  The consumer concluded that "I want my long overdue refund."  PAL was informed of this complaint and responded on March 16, 2021.

66.     Another consumer reported to the BBB on March 2, 2021 that "our family flight . . . to the Philippines was cancelled . . . and I am still waiting for a refund.  My 3 children and I were scheduled to go" but "I received an email . . . cancelling our flight."  The consumer reported that "I called several times and I was told to wait for 5 billing cycles.  I also emailed."  The consumer

concluded that "I would like a refund for my ticket . . . I have been patient . . . I would just like this matter resolved."

67.    Another consumer reported to the BBB on March 2, 2021 that "I had tickets for a flight during summer . . . which were cancelled due to COVID.  They confirmed they would refund the money and they have not . . .   Numerous communications indicated they would be issuing a refund.  The date for the refund kept getting push[ed] out."  The consumer concluded that they would like their "full refund of [the] ticket amount."  PAL was informed of this complaint and responded on March 16, 2021.

68.    Another consumer wrote to the BBB that "I purchase[d] a ticket from Philippine Airlines and I requested a refund several times but have not received any refund."  The consumer stated that "I have called the airlines numerous times since I purchased the [ticket] and it was to be refunded" but "then the refund time frame was extended."  The consumer then wrote that "I called again today to find out the status of my refund and I was informed they HAVE NO RECORD OF MY RESERVATION." (emphasis in original).  PAL was informed of this and responded on March 15, 20212 nothing that "the complaint and link do not mention the ticket number."

69.    Another consumer reported to the BBB on March 22, 2021 that "I still haven't received my refund.  It's officially been one entire year since I put in my initial request for a refund.  I still have not been refunded and have been given no information that confirms I'll be refunded."  PAL was informed of this consumer's complaint, but PAL did not respond.

70.    Another consumer complained to the BBB that "I purchased a ticket from Philippine Airlines last summer, 2020.  The flight was for September and by early August they had cancelled the flight.  I properly filled out the refund request and submitted it August 11, 2020."  The consumer wrote that "they assured me it would take five months or less to refund the money back to my account.  Still to this day, over seven months from my refund request, they still are not giving me an answer as to when it will be."  The consumer wrote that "I've seen online forums with people saying they've been waiting over 12 months!"  The consumer concluded that "I strongly believe they have no intention of paying anybody back and are going to declare bankruptcy.  What can I do?  Right now $900 is a lot of money to me and they have been making

interest off it for over seven months now." PAL was informed of this complaint and responded on April 5, 2021 and "request[ed] to be given further time to file our reply."

71.     Another consumer complaint to the BBB on March 31, 2021 that PAL "cancelled my flight due to COVID. I requested a refund and [PAL] stated it would take 5 months to process, after 5 months nothing was refunded. I called [PAL] and they told me to wait for 4 weeks, called again and told to wait another 4 weeks." The consumer stated that "I called every week to follow up but just keep being told to wait another week. I emailed them multiple times as well. Flight was cancelled back in April 2020." PAL was informed of this complaint and responded on April 13, 2021.

72.     Another consumer reported to the BBB on April 2, 2021 that "my refund was processed [the] first week of August 2020 and they asked for up to 5 months to get it back. But unfortunately until now I never got anything. I'm constantly following up [with] their [customer service] but all they can say is they can't do anything because it's already [in] their finance department's hand." PAL was informed of this complaint and responded on April 4, 2021.

73.     Another consumer reported to the BBB on April 15, 2021 that "my flight [March, 2020] was cancelled due to the pandemic and PAL emailed me on [April 23, 2020] that they processed my refund of $779.42 and to wait for 90 banking days." The consumer wrote that "I was patient and understanding because of the pandemic so I didn't follow up and call again until [November 24, 2020]. I was told 10 business days and still nothing." The consumer reported that "I called [December 16, 2020]. I was told they can't do / see anything because it is now being processed by the treasury department of PAL and its internal. On the same day, I sent them an email, I was told that it's being refunded and they sen[t] me a refund certificate. But there was nothing again." The consumer wrote that "I emailed [February 19, 2021] [and] they said they submitted a request to be expedited and [to] expect [it] in 30 working days. And now . . . still nothing." The consumer concluded that "following up with calls and emails is getting stressful. I believe I've given enough time, and was very patient. But almost a year is unacceptable and all I keep getting are reasons and time frames." PAL was informed of this consumer's complaint and responded on April 15, 2021.

### *Additional Complaints Confirming Excuse Of Any Conditions Precedent*

74.    As the complaints set out above demonstrate, PAL systematically prevented consumers from performing any conditions precedent to receiving a full refund for their cost of their tickets.  But these are not all of the known complaints.  Websites have emerged providing consumers with an additional outlet to publicly register their complaints against PAL.  One of these websites, *Airlines Inform*, has registered dozens of consumers further attesting to the problems described above.  Many of these are included below.

75.    On March 4, 2021 one consumer reported to Airlines Inform that "we bought 3 tickets and 1 other plane ticket last year in February 2020 because my father passed away.  I called [PAL] 3 times on separate occasions and ended up on promises of a refund.  It is almost a year now."  The consumer reported that "I couldn't take this anymore so I am finding a way to connect with other passengers with the same plight as we are as to the next move we should be taking.  I am already hopeless with [PAL's] promises."

76.    On March 10, 2021 another consumer wrote "report this airline . . . for not refunding the money that took months and years just to be refunded.  The more complaints to the U.S. . . . government about them will show that they are really not doing what they should be doing."  The consumer wrote "those people who bought [PAL] ticket[s] probably are having heart attack[s] because of worrying too much, health problems due to the long wait of the promised refund which they have not idea at this time people need the money and [PAL is] holding back."  The consumer further stated that "according to their policy refunds take 5 months.  It shouldn't take years for them to return the money.  They ignored their costumers who paid them . . . .  They don't care.  They have no concern [and are] unwilling to do it right away to return the money . . . .  Emails get ignored [and] phone calls [are] unhelpful."

77.    On March 12, 2021, another consumer wrote "I cancelled my round-trip ticket to the Philippines from LAX in August 2020.  Now mid-March I still don't have my refund.  I wasn't concerned until I saw all these other posts.  I'm feeling I have many more months to go.  Shame on you Philippine Airlines.  Stop making interest off of our money!"

78.    On March 12, 2021, another consumer wrote "if only I booked one . . . ticket for what $600-700.00 I can just forgive and save myself the heart attack, stress and anxiety of dealing – begging with them . . . .   The thing is its around $5000.00."   The consumer stated that "that is hard to come around these days especially for people who got furloughed and lost their jobs . . . . They deserve[] to be sued."

79.    On March 16, 2021, another consumer wrote "Guys, has anyone received their refunds lately?  Our flight was cancelled in June 2020 and we are still waiting."

80.    On March 18, 2021, another consumer wrote "my flight got cancelled in mid-May and refund acknowledgement on the day itself but the approval was processed only in early July.  I have been chasing them since then.  Initially refund was by 3 billing cycles, then 5 months, then 5 months excluding weekends and holidays."  The consumer wrote that "it takes about 4 or 5 emails to get an answer but the answers make one sick.  Purchased the tickets [at the] end [of] Dec[ember] 2019, 8 months have passed since approval of refund in early July and 10 months since acknowledgement."

81.    On March 20, 2021 another consumer wrote "deal with your credit card [company] if you are based in the U.S.  I've been given a run around for 14 months whenever I call and email so its useless to deal with PAL directly."

82.    On March 26, 2021, another consumer wrote "PAL cancelled my flight last August 2020 and the refund would take 5 billing cycles or 5 months.  Until now almost 9 months [and] still they [have not] return[ed] my money and the worse is they don't even update you regarding it."  The consumer wrote "I called them many times and spoke to different people [and] they always give me false hope that it will be in my account the next billing cycle."

83.    On April 5, 2021, another consumer wrote "sounds like PAL is doing this to countless customers . . . they cancelled our flights in March 2020.  I have called PAL [and] I have countless emails to PAL (save those) as well as calling the credit card company . . . all to no avail."  The consumer further stated that "there is no way I am letting them keep our money . . . think about how many customers they have done this to . . . all interest free . . . keep fighting for your money."

84.     On April 9, 2021, another consumer wrote "I bought tickets for my family (4 people) in December 2019 for [a] getaway in [the] Philippines in July 2020.  PAL cancelled the flight in June.  I opted for a full refund at that time.  I was told I would get it in 3 months.  Then it was extended to give 5 months."  The consumer wrote that "I've called PAL and emailed them many times but I keep getting the runaround that the delay is due to the pandemic.  I even sought the help of the Civil Aeronautics Board . . . nothing helped.  In February of this year I was refunded for only 1 ticket even though I provided information for all 4 passengers."  The consumer concluded that "now I'm worried it may take a very long time, or maybe never will I get the other party of that refund."

85.     On April 13, 2021, another consumer wrote "PAL assigned a refund reference number on June 11, 2020 after 2 weeks of my refund request.  They said it will take 90 banking days or an average of 2-3 billing cycles from the date of processing.  I started sending them follow-up emails after the 90-day period."  The consumer wrote that PAL "replied, saying this time it may take 5 months . . . alright I waited 5 months, no refund . . .  every month there[after], I kept bombarding them with emails, same reply."  The consumer reported that "it's now past 10 months and nothing with over 15 follow-up emails."

86.     On April 19, 2021, another consumer wrote "a refund for one ticket maybe they'll think that should shut you up for now.  [But] I have 11 family members for domestic flights . . . PAL still owes me over $3000."

87.     On April 20, 2021, another consumer wrote "I was told 5 months or 5 billing cycles, from last July to refund my ticket that was purchased in December 2019 – flight cancelled in late March 2020 because of COVID.  Today I called again and she said it was processed on January 21[, 2021] and within 5 billing cycles I will get a refund."

88.     On April 25, 2021, another consumer wrote "I'm all for class action suit.  Requested refund in May 2020 for cancelled flight.  They said wait 3 months, then nothing.  They said wait up to 5 months, nothing.  In January, I called again . . . [they] promised 30 days.  Never came."  The consumer also noted that they "sent an email to refund office, complaint to customer service, and complaint to Department of Transportation.  DOT replied sadly saying they could not assist me

because flight were not in U.S., but forwarded my complaint to PAL customer service . . . I got a reply from PAL [which was] the same response from Wednesday."  The consumer concluded that PAL is "doing whatever is takes to not refund people what is due to them."

89.     PAL also knew or should have known about these and other complaints.  Online reputation management (commonly called "ORM" for short), is now a standard business practice among most major companies and entails monitoring consumer forums, social media, and other sources on the internet where consumers can review or comment on particular companies. "Specifically, [online] reputation management involves the monitoring of the reputation of an individual or a brand on the internet, addressing content which is potentially damaging to it, and using customer feedback to try to solve problems before the damage to the individual's or brand's reputation."[7]  Many companies offer ORM consulting services for businesses.

90.     Like most companies, PAL presumably cares about its reputation and regularly monitors on-line consumer reviews because they provide valuable data regarding customer satisfaction and marketing analytics.  Reviews like those copies above would be particularly attention-grabbing for PAL's management because extreme reviews are sometimes the result of extreme problems, and – just like any other company – PAL is presumably sensitive to the reputational impact of negative online reviews.  Hence, PAL's management knew or should have known about the above-referenced consumer complaints shortly after each complaint was posted online.

91.     The fact that so many consumers made similar complaints about the same issue indicates that the complaints were not isolated incidents.  These complaints were similar enough to put PAL's management on notice that consumers had yet to receive their refunds despite waiting for the amount of time PAL requested.

## CLASS ALLEGATIONS

92.     Plaintiff seeks to represent a Class defined as all persons in the United States who purchased tickets for travel on a Philippine Airlines flight scheduled to operate to, from, or within

---

[7] WebSolutions Main, "Online Reputation,"  Available at https://websolutions-maine.com/online-reputation/ (last visited March 15, 2021).

the United States whose flights were cancelled or were subject to a significant schedule change and not refunded.

93.     Subject to additional information obtained through further investigation and discovery, the foregoing definitions of the Class may be expanded or narrowed through amendment to the complaint or narrowed at class certification.

94.     Specifically excluded from the Class are PAL, PAL's officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint ventures, or entities controlled by PAL, and their heirs successors, assigns, or other persons or entities related to or affiliated with PAL, the judge assigned to this action, and any member of the judge's immediate family.

95.     **Numerosity**.  The members of the proposed Class are geographically dispersed throughout the United States and are so numerous that individual joinder is impracticable.  Upon information and belief, Plaintiff reasonably estimates that there are hundreds of thousands of individuals that are members of the proposed Class.  Although the precise number of proposed members is unknown to Plaintiff, the true number of members of the Class is known by PAL. Members of the Class may be notified of the pendency of this action by mail and/or publication through PAL's distribution records.

96.     **Typicality**.  The claims of the representative Plaintiff are typical of the claims of the Class.  The representative Plaintiff, like all members of the Classes, paid for a PAL flight that was subjected to a significant schedule change and was not refunded for the cancelled flight or for any consequential damages and cancelations caused by the original cancelled flight.  The representative Plaintiff, like all members of the Class, has been damaged by PAL's misconduct in the very same way as the members of the Class.  Moreover, the factual bases of Defendants' misconduct are common to all members of the Class and represent a common thread of misconduct resulting in injury to all members of the Class.

97.     **Existence and Predominance of Common Questions of Law and Fact**.  Common questions of law and fact exist as to all members of the Classes and predominate over any

questions affecting only individual members of the Class.   These common legal and factual questions include, but are not limited to, the following:

      a.   Whether PAL failed to refund purchasers of cancelled flights and the consequential damages resulting therefrom;

      b.   Whether Philippine Airlines violated the terms of its Contract of Carriage;

      c.   Whether Plaintiff and the Classes are entitled to damages, restitution, equitable, injunctive, compulsory, or other relief.

98.    **Adequacy of Representation**.   Plaintiff will fairly and adequately protect the interests of the Class.   Plaintiff has retained counsel who are highly experienced in complex consumer class action litigation, and Plaintiff intends to vigorously prosecute this action on behalf of the Class.   Plaintiff has no interests that are adverse to those of the Class.

99.    **Superiority**.   The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class Members.   Each individual Class Member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish PAL's liability.   Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.   Individualized litigation also presents a potential for inconsistent and contradictory judgments.   In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of PAL's liability.   Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of issues related to liability.

## COUNT I
### Breach of Contract

100.    Plaintiff reincorporates and realleges each preceding paragraph herein.

101.    Plaintiff brings this claim on behalf of herself and members of the Class.

102.    Defendants entered into contracts with Plaintiff and members of the Class through its Contract of Carriage.

103.    PAL's Contract of Carriage provides for refunds in the event of involuntary

cancellations, such as those arising from the coronavirus pandemic: "[i]f PAL cancels a flight, or fails to operate a flight reasonably according to schedule, or fails to stop at a point to which you were destined or ticketed to Stopover, or is unable to provide previously confirmed space, the amount of the refund shall be subject to these Conditions of Carriage"

104.    PAL's Contract of Carriage also provides for refunds arising from voluntary cancellations: "[i]f you are entitled to a refund of your Ticket or any of its unused portion, including taxes, fees, or any other amount collected for or on behalf of any third party, for reasons other than those set out in Section 3 of this Article, the amount of the refund shall be in accordance with PAL's Tariffs."

105.    Plaintiff and members of the Class performed their portion of the bargain by paying the airline ticket fees for the flight before they were cancelled.

106.    For the reasons set forth above, PAL frustrated any condition precedent to Plaintiff and Class Members receiving a refund because PAL left Plaintiff on hold for extended periods of time and failed to respond to emails sent inquiring about the status of Plaintiff's refund.

107.    PAL has breached these contracts by retaining Plaintiff's and Class members' airline ticket fees while not providing flight services, in violation if its Contract of Carriage.

108.    Plaintiff and Class members have suffered an injury through the payment of money for tickets while not receiving services in return.

109.    Plaintiff and Class members have also suffered injury through PAL's unreasonable delay in issuing refunds, thus depriving Plaintiff and Class members the time value of their money. Essentially, PAL has unjust gained an interest-free loan through dilatory tactics and refusal to honor its refund policy.

110.    PAL has also frustrated its passengers' ability to request refunds, as demonstrated above.

111.    Plaintiff and Class members are entitled to damages for PAL's breach of its Contract of Carriage, or in the alternative, to rescission of the Contract of Carriage.

## COUNT II
### Unjust Enrichment

112.    Plaintiff reincorporates and realleges each preceding paragraph herein.  This claim is brought in the alternative to the contract-based cause of action.

113.    Plaintiff brings this claim on behalf of herself and members of the Class.

114.    Plaintiff and the Class conferred benefits on Defendants by purchasing airline tickets with PAL.

115.    Defendants have been unjustly enriched in retaining the revenues derived from Plaintiff and Class Members' purchase of airline tickets, where it has subsequently canceled or significantly changed the schedule for Class Members' flights and have not issued a refund. Retention of those moneys under these circumstances is unjust and inequitable because Defendants' failure to issue refunds is in violation of its Contract of Carriage, and is in violation of California law.  These acts and omissions caused injuries to Plaintiff and the Class because they would not have purchased their airline tickets at all, or on the same terms, if the true facts were known.

116.    Because Defendants' retention of the non-gratuitous benefits conferred on them by Plaintiff and the Class is unjust and inequitable, Defendants must pay restitution to Plaintiff and the Class for its unjust enrichment, as ordered by the Court.

## COUNT III
### Fraud

117.    Plaintiff reincorporates and realleges each preceding paragraph herein.

118.    Plaintiff brings this claim on behalf of herself and members of the Class.

119.    As discussed above, Defendants provided Plaintiff and Class members with false or misleading material information and failed to disclose material facts about how it processes refunds, contrary to the representations found in the Contract of Carriage.   These misrepresentations and omissions were made by Defendants with knowledge of their falsehood.

120.     The misrepresentations and omissions made by Defendants, upon which Plaintiff and Class members reasonably and justifiably relied, were intended to induce and actually induced Plaintiff and Class members to purchase their airline tickets.

121.     The fraudulent actions of Defendants caused damage to Plaintiff and the members of the Class, who are entitled to damages and other legal and equitable relief as a result.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests, individually and on behalf of the alleged Class, that the Court enter judgment in their favor and against PAL as follows:

a) An Order certifying the proposed Class and appointing Plaintiff and her Counsel to represent the Class;

b) An Order requiring PAL to immediately issue refunds to Plaintiff and Class members for the cost of the cancelled tickets, any cancellation fees, and consequential damages resulting therefrom;

c) An Order of disgorgement of wrongfully obtained profits;

d) An award of compensatory damages, in an amount to be determined;

e) An award of reasonable attorney's fees, cost and litigation expenses, as allowable by law;

f) Interest on all amounts awarded, as allowed by law; and

g) Such other and further relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable as of right.

Dated:  July 22, 2021                                Respectfully submitted,

                                                              **BURSOR & FISHER, P.A.**

                                                              By:_____*/s/ Neal J. Deckant*_____
                                                                            Neal J. Deckant

Neal J. Deckant (State Bar No. 322946)
Sean L. Litteral (State Bar No. 331985)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: ndeckant@bursor.com
        slitteral@bursor.com

*Attorneys for Plaintiff*

**EXHIBIT A**

The Wayback Machine - https://web.archive.org/web/20200918170313/https://www.philippineairlines.com/AboutUs/...

# ARTICLE 1 - DEFINITIONS

**"PAL"** means Philippine Airlines, Inc.

**"YOU," "YOUR,"** and **"YOURSELF"** means any person, except members of the crew, carried or to be carried in an aircraft pursuant to a Ticket. (See also definition of Passenger)

**"AGREED STOPPING PLACES"** means those places, except the place of departure and the place of destination, set forth in the Ticket or shown in PAL's timetables as scheduled stopping places on your route.

**"AIRLINE DESIGNATOR CODE"** means two or three characters or letters which identify a particular air carrier.

**"AUTHORIZED AGENT"** a passenger sales agent who has been appointed by PAL to represent it in the sale of air passengers' transportation services of PAL.

**"BAGGAGE"** means  your personal property accompanying you in connection with your travel. Unless otherwise specified, it includes both your Checked and Unchecked Baggage.

**"BAGGAGE TAG"** means a document issued by PAL solely for identification of Checked Baggage.

**"CHECKED BAGGAGE"** means your Baggage which PAL takes custody of and for which PAL has issued a Baggage Tag.

**"CHECK-IN DEADLINE"** means the time limit specified by PAL within which you must have completed check-in formalities and received your boarding pass.

**"CONNECTING FLIGHT"** means a subsequent flight providing onward travel on the same Ticket, on a separate Ticket or on a Conjunction Ticket.

**"CONJUNCTION TICKET"** means a Ticket issued to you in conjunction with another Ticket, both of which constitute a single contract of carriage.

**"CONVENTION"** means whichever of the following instruments is or are applicable:

- the Convention for the Unification of Certain Rules for International Carriage by Air, signed at Montreal, 28 May 1999 (referred to as the Montreal Convention;

- The Convention for the Unification of Certain Rules Relating to International Carriage by Air, signed at Warsaw, 12 October 1929 (referred to as the Warsaw Convention;

- the Warsaw Convention as amended at The Hague on 28 September 1955.

**"DAYS"** means calendar days, including all seven days of the week; provided that, for the purpose of notification, the day upon which notice is dispatched shall not be counted; and that for purposes of determining duration of validity of a Ticket, the day upon which the Ticket is issued, or flight is commenced shall not be counted.

**"DOMESTIC CARRIAGE"** means travel between points within the Philippines and there is no transit, transfer or Stopover outside the Philippines.

"DOMESTIC TICKETS" means Tickets with purely Philippine domestic itinerary.

"ELECTRONIC COUPON" means an electronic Flight Coupon for an Electronic Ticket held in PAL's database.

"ELECTRONIC TICKET" means the electronic record of your Ticket made by PAL or its Authorized Agent, which is held in PAL's database.

"FLIGHT COUPON" means that portion of the Ticket that bears the notation "good for passage," and indicates the particular places between which you are entitled to be carried.

"INTERNATIONAL CARRIAGE" means any carriage other than Domestic Carriage, however, when the Convention is applicable, the stated definition of "International Carriage" in the Convention shall prevail.

"ITINERARY RECEIPT" means a document or documents issued by PAL to Passengers travelling on Electronic Tickets that contains the Passenger's name, flight information and notices.

"PASSENGER" means any person, except members of the crew, carried or to be carried in an aircraft pursuant to a Ticket.

"PASSENGER COUPON" means that portion of the Ticket issued by or on behalf of PAL, which is so marked and which ultimately is to be retained by the Passenger.

"STOPOVER" means a deliberate interruption of the travel by the Passenger at a point between the place of departure and the place of destination, which has been agreed to in advance by PAL.

"TARIFF" means the published fares, fees or charges and related terms, conditions and restrictions filed, where required, with the appropriate authorities, and approved as such by the same.

"TICKET" means the document of carriage issued by PAL.

"UNCHECKED BAGGAGE" means any Baggage hand-carried by the Passenger and Baggage other than Checked Baggage.


# ARTICLE 2 - APPLICABILITY

### Section 1. GENERAL

Except as provided in Sections 4, 5, and 6 of this Article, these Conditions of Carriage apply to all domestic and international carriage of Passengers and Baggage operated by PAL, and in any case where PAL may have a legal liability to you in relation to your travel.

### Section 2. GRATUITOUS CARRIAGE

These Conditions of Carriage also apply to gratuitous or reduced fare carriage except to the extent that PAL has otherwise provided in its Tarrifs, or in relevant contracts, passes, tickets, or policies.

### Section 3. CONDITIONS SUBJECT TO CHANGE

PAL may change these Conditions of Carriage and PAL's Tariffs at any time, without prior notice. Your travel shall be governed by these Conditions of Carriage and PAL's Tariffs in force at the date you purchased your Ticket; provided, however, that PAL reserves the right to apply the Conditions of Carriage and PAL's Tariffs in effect on the date of your travel where reasonably necessary for operational efficiency.

## Section 4.  CHARTER OPERATIONS

If the carriage is performed pursuant to a charter agreement, these Conditions of Carriage apply only to the extent that they are incorporated by reference or otherwise, in the terms of the charter agreement and the charter ticket. In case of any inconsistency between these Conditions of Carriage and the provisions of said charter agreement and/or charter ticket, the latter shall prevail.

## Section 5. CODESHARES AND COMMERCIAL AGREEMENTS

On some services, PAL may have commercial agreements with other airlines such as code shares and/or licensing agreements. This means that, even if you have a reservation with PAL and you hold a Ticket showing PAL's Airline Designator Code, marks or tradename, another airline may operate the flight.

If such  a commercial agreement applies to your flight, PAL or its Authorized Agents will inform you at the time you make a reservation if PAL or another carrier will be operating the flight.
If your  flight is operated by another carrier, you may be subject to certain conditions of carriage of the operating carrier which may differ from those of PAL's, such as but not limited to:

1. refusal of carriage;
2. check-in deadline;
3. denied boarding compensation;
4. boarding fees;
5. baggage acceptance and liability;
6. flight disruptions;
7. advance seating arrangement;
8. unaccompanied minors;
9. carriage of animals;
10. stretcher assistance;
11. medical oxygen.

PAL's website, **www.philippineairlines.com** (https://web.archive.org/web/20200918170313/http://www.philippineairlines.com/),  contains  a  list  of  partner carriers of PAL and provides links to each of their conditions of carriage.

## Section 6.  OVERRIDING LAW

These Conditions of Carriage are applicable unless they are inconsistent with PAL's Tariffs and applicable laws, rules, and government regulations in which event such Tariffs,  laws, rules, and government regulations shall prevail. If any provision of these Conditions of Carriage is invalid, under any applicable law, rules, and government regulations, the other provisions shall nevertheless remain valid.

## Section. 7. CONSENT OF PASSENGERS

Upon your purchase of a Ticket for carriage by air on PAL, you shall be deemed to have acknowledged and given consent to these Conditions of Carriage and PAL's Tariffs.

# ARTICLE 3 - TICKETS

### Section 1. GENERAL PROVISIONS

(a) A person shall not be entitled to be carried on a flight unless that person presents and is named in a valid Ticket containing all corresponding Flight Coupon or Electronic Coupon duly issued in accordance with these Conditions of Carriage and PAL's Tariffs. PAL may require you  to present appropriate identification.

 (b) You shall not be entitled to be carried if the Ticket presented is mutilated or if it has been altered by a person other than PAL or its Authorized Agent.

 (c) Your Ticket is not transferable.  If a Ticket is presented for carriage or for refund by someone other than you, PAL shall not be liable to you, if in good faith, it provides carriage or makes a refund to the person presenting the Ticket.

 (d) The Ticket is and remains at all times property of PAL.

 (e) Changes to the Ticket you requested will be subject to PAL's Tariffs and may require payment of a change fee.

### Section. 2.   PERIOD OF VALIDITY

Except as otherwise provided in the Ticket, these Conditions of Carriage or PAL's Tariffs, an International Ticket is valid for carriage for one (1) year from the date of commencement of travel, or if no portion of the Ticket is used, from the date of issuance of the Ticket. A Ticket issued at other than normal fare or under certain restrictions may have a different period of validity as provided for in the conditions prescribed in the Ticket or PAL's Tariffs.


A Domestic Ticket is valid for one (1) year from the date of its issuance.

### Section  3.   EXTENSION OF VALIDITY

(a) PAL may extend the validity of your Ticket in accordance with applicable laws, rules, and government regulations.

(b) If you are unable to commence or continue your travel within the period of validity of the Ticket by reason of illness, PAL may extend the period of validity of your Ticket until PAL's first flight after the date when you become fit to travel according to a medical certificate, from the point where the travel is resumed on which space is available in the class of service for which the fare has been paid. Provided, however that, when the flight segments remaining in the Ticket involve  one or more Stopovers, the validity of such Ticket, subject to PAL's Tariffs, will be extended for  three (3) months from the date shown on the medical certificate.

(c) In the event of death of the Passenger or his/her immediate family member, PAL may likewise extend the validity of their Tickets. Any such change on the Ticket shall be made upon receipt of a proper death certificate and any such extension of Ticket validity shall not be for a period longer than forty-five (45) days from the date of the death.

### Section 4. COUPON SEQUENCE

(a) The Ticket you purchased is valid only for the transportation as shown on the Ticket, from the place of departure via any Agreed Stopping Places to the final destination. Electronic and Flight Coupons shall be honored only in sequence. The Ticket will not be honored and will lose its validity if all the coupons are not used in sequence provided in the Ticket.

(b) Each Electronic or Flight Coupon will be accepted for carriage in the class of service specified on the Ticket on the date and flight for which space has been reserved. When a Ticket is originally issued without a reservation being specified, space may be later reserved subject to PAL's Tariffs, and the availability of space on the flight requested.

(c) If you fail or have failed to use the Electronic or Flight Coupons in sequence, PAL is entitled to recompute the fares in accordance with PAL's Tariffs and you are liable to pay PAL any fare difference applicable.

# ARTICLE 4 - FARES AND CHARGES

## Section 1. FARES

(a) Fares apply only for carriage from the airport at the point of origin to the airport at the point of destination.

(b) Your fares are calculated in accordance with PAL's Tariffs. Fares to be paid may change in cases of changes in your itinerary or dates of travel.

(c) Where you voluntarily change the schedule of your flight as reflected in the Ticket, and there is a difference between the fare paid and the available fare in the new schedule. You shall pay the applicable fare difference in accordance with PAL's Tariffs.

(d) Fares do not include ground transport service between airports and between airports and town terminals, unless provided by PAL without additional charge.

## Section 2. TAXES, FEES AND CHARGES

Applicable taxes, fees or charges imposed by government authority, or other offices such as airport operators, must be paid by you in full before carriage, except as otherwise provided in PAL's Tariffs. The taxes, fees and charges imposed on air travel are beyond PAL's control and are constantly changing. Taxes, fees and charges may be imposed or increased even after the date of Ticket issuance. PAL reserves the right to refuse carriage if the applicable taxes, fees and charges are not paid.

## Section 3. CURRENCY

Fares, taxes, fees and charges are payable in the currency in which the fare is published. PAL may, at its discretion, accept payment in another currency subject to applicable rate of exchange.

# ARTICLE 5 - RESERVATIONS

## Section 1. RESERVATION REQUIREMENTS

Case 2:20-cv-05607-SB-AT Document 1 Filed 07/22/21 Page 43 of 57

(a) A reservation is not confirmed until:

    1. It is entered on the appropriate Flight or Electronic Coupon, by PAL or its Authorized Agent;

    2. You have paid for your Ticket; and

    3. A Ticket has been duly issued to you, or in the case of an Electronic Ticket, when it has been duly created in PAL's database.

    A reservation that does not comply with any of these requirements may be cancelled by PAL at any time without notice.

(b) As provided in PAL's Tariffs, certain fares may be subject to conditions which limit or exclude your prerogative to change or cancel reservations.

## Section 2.  TICKETING AND TIME LIMIT

If you have not paid or made credit arrangements for the Ticket with PAL prior to the specified ticketing time limit as advised by PAL or its Authorized Agent, PAL will cancel your reservation without prior notice.

## Section  3.  PERSONAL DATA

You recognize that your personal data have been given to PAL for the purposes of: making a reservation, purchasing a Ticket, for obtaining ancillary services, facilitating immigration and entry requirements, complying with regulatory requirements of government authority and making available such data in connection with your travel. For these purposes, you agree and authorize PAL to retain and process or use such data and to transmit them to its own offices, Authorized Agents, government authorities, other carriers or the providers of the above-mentioned services. In booking your travel, you provide PAL your consent to be added to PAL's email list that will be used to contact you occasionally with commercial electronic messages such as offers and promotions that PAL feels will be of interest to you.

## Section 4.  SEATING

PAL will endeavor to honor your advance seating requests. However, PAL does not guarantee to provide any particular seat in the aircraft and you agree to accept any seat that may be allotted on the flight in the class of service for which your Ticket has been issued.

PAL reserves the right to assign or re-assign seats at any time, even after boarding of the aircraft. This may be necessary to comply with laws, rules, and government regulations, or for operational, safety, or security reasons.
PAL reserves the right to charge for more than one seat in cases where the physical condition of the Passenger require additional seat.

## Section 5.  RECONFIRMATION OF RESERVATIONS

Your reservation may be subject to the requirement that it be reconfirmed not later than seventy-two (72) hours before flight departure. Your reservation with other carriers involved in your travel must be reconfirmed with the carrier whose Airline Designator Code appears on the Ticket, and in accordance with their respective reconfirmation requirements.

**Section 6.  CANCELLATION OF RESERVATIONS**

If you do not use a reservation and fail to advise PAL, your reservation, including onward or return reservations, may be cancelled without prior notice.

# ARTICLE 6 - CHECK-IN AND BOARDING

(a)   Check-in Deadlines and boarding requirements are different in every airport and you must be aware of these deadlines and requirements prior to your travel. You must arrive at PAL's check-in location and assigned boarding gate sufficiently in advance of flight departure to permit completion of all departure procedures, including government formalities, and in any event not later than the time that may be indicated by PAL.

PAL may cancel the space reserved for you if you fail to arrive on time at PAL's check-in location or if you fail to arrive at the assigned boarding gate within reasonable time prior to the closing of gates in preparation for departure.  PAL will not delay departure of the flight by reason of such failure.

(b)  Persons with disability or Passengers requesting for special assistance may be required to check-in earlier than the regular check-in time.

(c)  PAL will not be liable to you for any loss or expense incurred due to your failure to comply with the required Check-In Deadlines or boarding requirements.

# ARTICLE 7 - REFUSAL AND LIMITATION OF CARRIAGE

**Section 1.  RIGHT TO REFUSE CARRIAGE**

PAL will not refuse carriage to any person based solely on race, sex, color, nationality or religion.  Further, as a matter of policy, PAL will not refuse carriage to any person based solely on disability subject to exceptions that may be allowed by applicable laws, rules, and government regulations.

PAL may refuse to carry you or your Baggage, or may remove you from the aircraft at any time, for any of the following reasons:

(a) You fail or refuse to comply with these Conditions of Carriage;

(b) (i) The applicable fare or any charges or taxes payable have not been paid, or credit arrangements with PAL have not been complied with; (ii) the payment is done through fraudulent means; (iii) when the credit card used for payment could not be authenticated upon booking or is subsequently reported to be lost or stolen; or (iv) when the credit card used for payment is not presented for validation, if so required by PAL;

(c) The refusal to transport or removal from PAL's aircraft is necessary to comply with any applicable laws, rules, and government regulations of any country to be flown from, to or over;

(d) Such action is necessary or advisable by reason of weather or other conditions beyond PAL's control including, but not limited to: acts of God, force majeure, strikes, civil commotions, embargoes, wars, hostilities, terrorist activities, or disturbances, whether actual, threatened, or reported;

(e) (i) You appear to be improperly documented; (ii) you cannot prove, when so required that, you are the person named in the Ticket; (iii) the Ticket has been acquired or reported to have been acquired unlawfully or has been purchased or reported to have been purchased from an entity other than PAL or its Authorized Agent; (iv) your Ticket is acquired illegally, (v) if you're Ticket is a counterfeit Ticket or has been altered, torn, damaged or tampered with; (vi) when the immigration authority of the country you are traveling to, or of a country in which you have a Stopover, informed PAL (either verbally or in writing) that it has decided not to allow you to enter that country, even if you have, or appear to have, valid travel documents; (vii) when you destroy your travel documents during the flight; (viii) when you have refused to allow PAL to photocopy your travel documents; (ix) when you have refused to give your travel documents to a member of the crew of the aircraft, when PAL asked you to do so;

(f) You are a person in the custody of law, unless you are sufficiently escorted;

(g) Such refusal or removal is reasonably necessary for the security, safety or comfort of other Passengers or PAL's employees; or to prevent damage to the property of PAL or of its Passengers or crew or employees, including, but not limited to the following instances:

1. When you assault, intimidate or threaten, whether physical or verbal, any of PAL's ground staff, crew members or other Passengers;When you assault, intimidate or threaten, whether physical or verbal, any of PAL's ground staff, crew members or other Passengers;
2. When you create a disturbance which interferes with the duties of the ground staff, flight crew or when the disturbance necessitates the pilot-in-command or any member of the cockpit crew to leave the cockpit to attend to the same;
3. When you refuse to follow a lawful instruction given by the pilot-in-command, or on behalf of the pilot-in-command, or by a crew member for the purpose of ensuring the safety of the aircraft or of any person or property on board or for the purpose of maintaining good order and discipline on board;
4. When you commit an act of physical violence, sexual assault, or child molestation, against other persons;
5. When your conduct results or may result to a risk of harm or damage to the aircraft, or properties belonging to PAL, its Passengers, or employees;
6. When you refuse to submit to a security check;
7. When you refuse to follow PAL's policy on smoking and use of alcoholic beverages and drugs;
8. When you tamper with the smoke detector or any other safety-related device on board the aircraft;
9. When you fail to comply with safety regulations, including fastening seatbelts when required;
10. When you use portable electronic device when such is prohibited;
11. When you are not properly clothed;
12. When you have a contagious disease which may be transmitted to others during the fight;
13. When the Passenger who may have been required to present medical clearance in accordance with applicable laws, rules, and government regulations, failed to submit said medical certificate and where it appears that he/she cannot complete the flight without requiring medical assistance;
14. When your conduct is disorderly, abusive, offensive or violent;
15. When your conduct results or may result to a risk of annoyance, offense or disturbance to other Passengers;
16. When you have made a hoax bomb or other security threat;

## Section 2.  CONSEQUENCES OF REFUSAL OF CARRIAGE AND REMOVAL OF PASSENGER

If you commit any of the acts enumerated under Section 1(g) of this Article, and conduct yourself aboard the aircraft so as to endanger the aircraft or any person or property on board, PAL may take such measures reasonably necessary to prevent continuation of your conduct, including restraint. You may be disembarked and refused

onward carriage at any point.

If, for the reasons enumerated under Section 1 of this Article, PAL has refused to carry you, or removed you en route, PAL may cancel the remaining unused portion of your Ticket and you will not be entitled to further carriage or to a refund either in respect of the sector subject of the refusal of carriage or removal, or any subsequent sectors covered by the Ticket. PAL reserves the right to prosecute offences committed. PAL will not be liable for any consequential loss or damage alleged due to any such refusal to carry or removal en route.

## Section 3. GENERAL INDEMNITY

If you conduct yourself in a manner described in Section 1 of this Article, you will indemnify PAL for all claims or losses, including, but not limited to, all costs arising from the diversion of the aircraft for the purpose of offloading you and all losses suffered or incurred by PAL, its Authorized Agents, employees, independent contractors, Passengers, and any third party in respect of death, injury, loss, damage or delay to other persons or to property, arising from such conduct.

## Section 4. OTHER LIMITATIONS ON CARRIAGE

(a) Acceptance for carriage of unaccompanied children, persons with disability, pregnant women or ailing persons may be subject to prior arrangements with PAL, in accordance with these Conditions of Carriage and any applicable laws, rules and government regulations.

(b) Acceptance for carriage of persons requiring special assistance such as but not limited to medical oxygen for use on-board the aircraft, packaging of wheelchair and wheelchair batteries, stretchers and other similar assistance, may be subject to advance notice and prior arrangements with PAL, in accordance with these Conditions of Carriage, PAL's Tariffs and any applicable laws, rules, and government regulations.

(c) If PAL believes that the aircraft weight limitation or seating capacity would otherwise be exceeded, PAL will decide in its reasonable discretion which persons or articles shall be carried.

## Section 5. MEDICAL CLEARANCE REQUIRED

Subject to applicable laws, rules, and government regulations, PAL may require a medical clearance when, in good faith and using its reasonable discretion, PAL determines there is reasonable doubt that a Passenger can complete the flight safely without requiring extraordinary medical assistance.

## Section 6. BANNING NOTICE

In addition to its right to refuse carriage under any of the grounds in Section 1 of this Article, PAL reserves the right to ban any person from all its flights and from availing of any of its services for the following reasons:

(a) Such person is a serious or habitual offender under any of the instances enumerated in Section 1;

(b) When records support that you habitually and in bad faith, filed unwarranted complaints against PAL and its employees.

## Section 7. ATTENDANT'S REQUIRED

For reasons of safety, Passengers in the following categories may be required to travel with a safety assistant:

(a) A Passenger with a mobility impairment so severe that the individual is unable to assist in his/her own evacuation:

(b) A Passenger with severe hearing and severe vision impairment who is unable to establish some means of communications with PAL's personnel adequate to permit the Passenger to receive PAL's safety briefing as may be required by the applicable law, rules, and government regulations;

(c) A Passenger who is traveling on a stretcher or in an incubator or who requires administration of certain medical services during the flight (e.g. medical oxygen, respirator, intravenous injections, etc.) which he/she cannot administer on himself/herself;

(d) A Passenger who because of a mental disability, is unable to comprehend or respond appropriately to safety instructions from PAL's personnel, including safety briefing required by applicable laws, rules, and government regulations.

# ARTICLE 8 - BAGGAGE

## Section 1.  FREE BAGGAGE ALLOWANCE

You may carry some Baggage, free of charge, subject to the conditions and limitations of these Conditions of Carriage and PAL's Tariffs. PAL also reserves the right to change its free baggage allowance.

## Section 2. EXCESS BAGGAGE

You will be required to pay a charge for the carriage of Baggage in excess of the free baggage allowance at the rate and in the manner provided in these Conditions of Carriage or PAL's Tariffs.  Baggage in excess of the free baggage allowance will be carried only at PAL's discretion, subject to space availability and weight limitation. Excess baggage includes oversized and overweight baggage.

## Section 3. ITEMS NOT ACCEPTABLE AS BAGGAGE

(a)   You shall not include in your Baggage:

1. items which do not constitute Baggage as defined in Article 1 and as stated below;
2. items which are likely to endanger the aircraft or persons or property on board the aircraft, such as those specified in the Dangerous Goods Regulations of the International Civil Aviation Organization (ICAO) and the International Air Transport Association (IATA), these Conditions of Carriage and PAL's Tariffs;
3. items which are prohibited for carriage by any applicable laws, rules, and government regulations;
4. live animals, except as provided in Section 11 of this Article.
5. Items, which in the opinion of PAL, are unsuitable for carriage because they are dangerous, unsafe or by reason of their weight, size, shape or character, or because they are fragile or perishable.

(b)   Firearms and ammunitions may be accepted as Checked Baggage provided that they are covered by proper authorization, permits, and licenses from the appropriate government authority. Firearms must be unloaded, have the safety catch on, and must be suitably wrapped and packaged, and PAL may require them to be

delivered to and remain in its custody until your arrival at the airport of destination. Carriage of firearms and ammunitions is subject to ICAO and IATA Dangerous Goods Regulations and any applicable laws, rules, and government regulations.

(c)    PAL may implement restrictions on the carriage of liquids, aerosols and gels in compliance with guidelines set by the ICAO, IATA and any applicable laws, rules, and government regulations.

(d)    You shall not include in your Checked Baggage, artwork, cameras, money, jewelry, precious metals, silverware, computers, diving computers, personal electronic devices, negotiable papers, securities or other valuables, business documents, passports and other identification documents or samples, unless otherwise permitted by PAL in accordance with these Conditions of Carriage.

(e)    Weapons such as swords, knives and similar items may be accepted as Checked Baggage in accordance with these Conditions of Carriage, but will not be permitted in the cabin.

(f)    If any item referred to in this Article Sub-sections (a), (b) or (c)  above is carried,  whether or not it is prohibited from carriage as Baggage, its carriage shall be subject to the charges, limitations of liability and other provisions of these Conditions of Carriage.

## Section 4.   CHECKED BAGGAGE

(a)    Upon delivery to PAL of your Baggage to be checked, PAL shall take custody thereof and issue a Baggage Tag.

(b)  If the Baggage has no name, initials or other personal identification, you shall affix such identification to the Baggage prior to acceptance by PAL.

(c)  Checked Baggage will be carried on the same flight as you, subject to considerations of safety, security, or any other legal and valid cause, in which case, PAL will carry the Checked Baggage on PAL's next flight on which space is available.

(d)    PAL reserves the right to restrict the weight, size and character of Baggage according to capacity and accommodation of the particular aircraft.

(e)    You must ensure that the Checked Baggage is sufficiently robust and well secured to withstand the usual and normal rigors of carriage by air without sustaining damage except for ordinary wear and tear.

## Section 5.   UNCHECKED BAGGAGE

(a)    PAL may specify maximum dimensions and/or weight for Baggage which you carry in the aircraft. If PAL has not done so, Baggage which you carry into the aircraft must fit under the seat in front of you or in an enclosed storage compartment in the cabin. Items determined by PAL to be of excessive weight or size will not be permitted in the cabin and if suitable shall be transported as Checked Baggage.

(b)  Objects not suitable, in the opinion of PAL, for transport in the cargo compartment, such as but not limited to delicate musical instruments and the like, will only be accepted   for transportation in the cabin compartment if due notice has been given in advance and  permission granted by PAL.  The transport of such objects may be subject to separate charges.

(c)  PAL shall not be responsible for loss or damage of Unchecked Baggage not attributable to PAL.

(d)  PAL may allow you to carry electronic devices on board, however, for security and safety reasons, and in accordance laws, rules, and government regulations of countries to be flown from, to, or over, PAL may limit the use aboard the aircraft of transmitting portable devices, including, but not limited to, cellular phones, laptop computers, E-book readers, personal gaming consoles, and two-way radios.

## Section 6.   RIGHT TO REFUSE CARRIAGE OF BAGGAGE

(a)  PAL may refuse to carry as Baggage the items described in Section 3 of this Article and may refuse further carriage of any such items upon discovery.

(b)  PAL may refuse to carry as Baggage any item, reasonably considered by PAL to be unsuitable for carriage by reason of its size, shape, weight, content, or character; or for safety or operational reasons; or for the comfort of other Passengers. PAL may refuse to accept Baggage as Checked Baggage unless it is properly packed in suitcases or other similar containers to ensure safe carriage with ordinary care in handling.

(c)  PAL may refuse to carry as Baggage any item, due to security, safety or operational reasons, including Baggage which does not belong to you or which you have pooled with your Baggage. PAL will not be liable for such Baggage and PAL reserves the right to seek indemnity from you in respect of claims or losses incurred as a result of damage caused to it.

(d)  Subject to laws, rules, or government regulations, PAL shall carry passenger wheelchairs or other disability-assistive devices, unless such carriage would be inconsistent with safety requirements.

(e)  PAL shall not check through Baggage for other carriers with whom it does not have an interline agreement with. You are responsible for clearing your Baggage and having it checked-in and re-tagged for your onward flight. In such circumstances, PAL shall not be liable for any loss, damage or delay.

## Section. 7.   RIGHT OF SEARCH

For safety and security reasons, PAL may conduct a search on your person and your Baggage, for the purpose of determining whether you are in possession of, or whether your Baggage contains any item described in Section 3, or any firearms, ammunitions, or weapons are not presented to PAL in accordance with Section 3 of this Article. If you are unwilling to comply with such request, PAL may refuse to carry you and/or your Baggage. In the event a search or scan causes damage to your Baggage, PAL shall not be liable for such damage unless due to its fault or negligence.

The right of search of PAL does not impose an obligation on PAL, nor does it constitute an agreement, either express or implied, by PAL to allow carriage of items which would otherwise be precluded from carriage under Sections 1 and 2 of this Article.

## Section 8. EXCESS VALUE DECLARATION AND CHARGES

(a)  You may declare a value for Checked Baggage in excess of the applicable limits of liability. If you make such a declaration, you shall pay the applicable charges in accordance with PAL's Tariffs. PAL shall have the option to inspect the Checked Baggage to ascertain veracity of the declared value.

(b)  PAL will refuse to accept an excess value declaration on Checked Baggage when a portion of the carriage is to be provided by another carrier which does not offer the facility.

(c) Except as otherwise provided in PAL's Tariffs, excess value charges shall apply for the entire travel and shall be payable at the point of origin, provided that if at a Stopover en route, you declare a higher excess value than that originally declared, additional excess value charges for the increased declared value from such Stopover to final destination shall be payable.

## Section 9.   COLLECTION AND DELIVERY OF BAGGAGE

(a) You are required to collect your Baggage as soon as it is available for collection at places of destination or Stopover. Should you not collect it within a reasonable time, PAL may charge you a storage fee.

(b) Only the bearer of the Baggage Tag is entitled to delivery of Baggage.

(c) If a person claiming the Baggage is unable to produce the Baggage Tag and identify the Baggage by any other means, PAL will deliver the Baggage to such person only on the condition that he or she establishes to PAL's satisfaction his or her right to the same. PAL also reserves the right to require such person to furnish adequate security to indemnify PAL for any possible loss, damage or expense which may be incurred by PAL as a result of such delivery.

(d) Acceptance of Baggage by the bearer of the Baggage Tag without written complaint at the time of delivery is proof that the Baggage has been delivered in good condition and in accordance with these Conditions of Carriage.

## Section 10.   UNCLAIMED BAGGAGE

Any Baggage which is unclaimed after being in PAL's possession for thirty (30) days shall be disposed of by PAL in any manner it deems proper.

## Section 11.   ANIMALS

(a) Carriage of animals by PAL shall be subject to the following conditions:

(a) You must ensure that animals, such as dogs, cats, household birds and other pets, are properly crated and accompanied  by valid  health and vaccination certificates, entry permits, and  other documents required by countries of entry or transit, failing which, they will not be accepted for carriage. Animals may be accepted for carriage as Checked Baggage, subject to PAL's Tariffs.

(b) If accepted, the animal, together with its container and food carried, shall not be included in your free baggage allowance, and will constitute excess baggage, for which you will be required to pay the applicable excess baggage rate. Animals shall not be carried in the Passenger cabin.

However, PAL may issue policies to allow service animals, such as guide dogs, accompanying Passengers with disability, consistent with applicable laws, rules, and government regulations. Provided that, containers and food of such animal shall be considered as Checked Baggage and will be carried subject to PAL's Tariffs.

(c) You shall assume full responsibility for the animal carried: (i) Where carriage is not subject to the liability rules of the Convention, PAL shall not be liable for any injury to or loss, sickness or death of such animal. (ii) PAL shall have no liability in respect of any such animal not having all the necessary exit, entry, health and

other documents with respect to the animal's entry into or passage through any country. The person transporting the animal must reimburse PAL for any fine, costs, losses or liabilities reasonably imposed or incurred by PAL as a result.

(d)   PAL shall have no liability to you if you are unable to travel as a result of the refusal of carriage to any animal that you attempt to carry on the aircraft.

## Section 12.   PLANTS

Plants, flowers, fruits, cuttings or other plant products may be carried subject to these Conditions of Carriage and PAL's Tariffs, and any applicable laws, rules, and government regulations of any country to be flown from, to or over.

## Section 13.   ITEMS REMOVED BY AIRPORT SECURITY PERSONNEL

PAL will not be responsible for, nor have any liability in respect of items removed from you or your Baggage by government authority or airport security personnel.

# ARTICLE 9 - SCHEDULES, CANCELLATION OF FLIGHTS

## Section 1. SCHEDULES

The flight times shown in timetables may change between the date of publication and the date you actually travel, as shown in the Ticket. PAL does not guarantee these schedules and they do not form part of your Conditions of Carriage.

## Section 2.   CANCELLATION, CHANGES OF SCHEDULE, ETC.

(a)   Subject to applicable laws, rules, or government regulations, PAL may, when circumstances so require, cancel, terminate, divert, postpone, delay any flight, alter or omit stopping places shown on the Ticket or in schedules and may without notice substitute alternate carriers or aircraft and PAL assumes no liability for making connections.

(b)   If due to circumstances beyond its control, PAL cancels or delays a flight, is unable to provide previously confirmed space, fails to stop at a Stopover or point of destination, or causes you to miss a connecting flight on which you hold a confirmed reservation, PAL shall not be liable for losses or damages including any indirect, special or consequential loss, expense or damage.

# ARTICLE 10 - REFUNDS

## Section 1.   GENERAL

Refund of a Ticket or any of its unused portion, including taxes, fees, or any other amount collected for or on behalf of any third party, shall be subject to these Conditions of Carriage and PAL's Tariffs.

## Section 2.   WHEN TO FILE FOR REFUND AND TO WHOM REFUND WILL BE MADE

(a) Refund of a Ticket or any of its unused portion, including taxes, fees, and or any other amount collected for or on behalf of any third party, shall be applied with PAL within the period of the validity of the Ticket and thirty (30) days thereafter.

(b) Except as provided in this Article, refund shall be made either to the Passenger, or to the person who has paid for the Ticket upon presentation of satisfactory proof of entitlement to the refund.

(c) If a Ticket has been paid for by a person other than the Passenger, and PAL, upon instruction of such person, has so indicated on the Ticket that there is a restriction on refund, PAL shall make a refund only to that person paying for the Ticket or to that person's order.

(d) A refund made to anyone holding himself or herself out as a person to whom refund may be made in terms of (a) above shall be deemed a proper refund and shall discharge PAL from liability and any further claim for refund.

(e) Refund due to Tickets, including taxes, fees, or any other amount collected for or on behalf of any third party, paid for with credit cards will only be charged back to the credit card accounts originally used for the Ticket purchase. The refundable amount to be charged back to the credit card account of the card owner may vary from the originally debited amount due to differences in the exchange rate. Such variances do not entitle the recipient of the refund to a claim against PAL. PAL shall not be held liable for any damages that may result from the ticket cancellation.

(f) If the credit card used is not under Passenger's account name, Passenger warrants that the he/she and the credit card holder both agreed that: 1) either the Passenger or credit card holder may apply for online refund; and 2) the refund will automatically be charged back to the credit card account originally used.

## Section 3.  INVOLUNTARY REFUND

If PAL cancels a flight, or fails to operate a flight reasonably according to schedule, or fails to stop at a point to which you are destined or ticketed to Stopover, or is unable to provide previously confirmed space, the amount of the refund shall be subject to these Conditions of Carriage, PAL's Tariffs, and applicable laws, rules, and government regulations.

## Section 4.  VOLUNTARY REFUNDS

If you are entitled to a refund of your Ticket or any of its unused portion, including taxes, fees, or any other amount collected for or on behalf of any third party, for reasons other than those set out in Section 3 of this Article, the amount of the refund shall be in accordance with PAL's Tariffs.

## Section 5.  RIGHT TO REFUSE REFUND

(a) PAL may refuse refund when your application is made thirty (30) days after the expiry of the validity of the Ticket.

(b) PAL may refuse refund on a Ticket, including taxes, fees, or any other amount collected for or on behalf of any third party, which has been presented to PAL or other carriers or to government officials of a country as evidence of intention to depart from such country, unless you are able to establish to PAL's satisfaction that

you have permission from the government to remain in the country or that you will depart such country by another carrier or by another means of transport.

(c) PAL may refuse refund in the circumstances covered by Article 7, Section 2 of these Conditions of Carriage.

## Section 6. CURRENCY

All refunds will be subject to applicable laws, rules, and government regulations of the country in which the Ticket was originally purchased and of the country in which the refund is being made. Subject to the foregoing provision, refunds will normally be made in the currency in which the Ticket was paid but may be made in another currency in accordance with PAL's Tariffs.

# ARTICLE 11 - ARRANGEMENTS WITH CARRIER

## Section 1. NO LIABILITY FOR ADDITIONAL SERVICES

If in the course of concluding the Conditions of Carriage by air, PAL also agrees to make arrangements for the provision of additional services such as hotel accommodations, excursion trips and the like, PAL does so only as your agent and shall have no liability to you for any loss, damage or expense of any nature whatsoever you incurred as a result of or in connection with your use of such arrangements or the denial of its use by any other person, company or agency.

## Section 2. STOPOVERS

Stopovers may be permitted at Agreed Stopping Places only if arranged with PAL in advance, subject to these Conditions of Carriage and PAL's Tariffs.

## Section 3. ALTERNATE TRANSPORTATION

Consistent with Section 1 of Article 9 above, PAL may arrange for comparable air transportation or for other transportation which, at the time such arrangement is made, is scheduled to arrive at the place of your next Stopover, or place of your destination within the same time or reasonably within the same time frame as the scheduled arrival time of the flight where you hold a confirmed reservation.

# ARTICLE 12 - ADMINISTRATIVE FORMALITIES

## Section 1. GENERAL

(a) You are responsible for obtaining and holding all required travel documents and visas and for complying with all applicable laws, rules, and government regulations, and travel requirements of all countries to be flown from, to or through which you transit. PAL shall not be liable to you on the following circumstances:

1. for any aid or information given by any agent or employee of PAL in connection with obtaining necessary documents or visas or complying with such laws, rules, and government regulations, whether given in writing or otherwise; or

2. for your failure to obtain such documents or visas or to comply with such laws, rules, and government regulations.

## Section 2. TRAVEL DOCUMENTS

(a)  Prior to your travel, you must present all exit, entry, health and other documents required by laws, rules, and government regulations of the countries concerned and permit PAL to take and/or retain copies of it.

(b)  PAL reserves the right to require you to present any of these documents at any time during the carriage. PAL may also refuse to carry you if you have not complied with applicable laws, rules, and government regulations or when PAL has reason to believe that your travel documents are not in order.

## Section 3. PASSENGER RESPONSIBLE FOR FINES, DETENTION COSTS, ETC.

(a) You are required to pay the applicable fare whenever PAL, on government orders, is required to return you to your point of origin or elsewhere, owing to your inadmissibility into a country, whether of transit or of destination.

(b) If PAL is required to pay any fine or penalty or it incurred any expenditure by reason of your failure to comply with any applicable laws, rules, and government regulations, and travel requirements of the countries concerned or to produce the required documents, you shall, on demand, reimburse to PAL any amount so paid and any expenditure so incurred.

(c)  PAL may use for such expenditure any funds paid to PAL for unused carriage, or any of your funds in PAL's possession.

(d) In addition to the above, PAL reserves the right to hold you liable for any fine and penalty incurred by PAL by reason of any fraud or misrepresentation you commit in relation to your travel or immigration documents.

## Section 4. CUSTOMS OR OTHER OFFICIAL INSPECTION

(a)  If required, you shall attend the inspection of your Baggage, checked or unchecked, by customs or other government officials.

(b)  PAL is not liable to you for any loss or damage you suffered through your failure to comply with this requirement.

## Section 5. SECURITY INSPECTION

You shall submit to any security checks by PAL, government or airport officials to carry out security screening on your person and your Baggage.

# ARTICLE 13 - LIMITATIONS OF LIABILITY

## Section 1. GENERAL PROVISIONS

These Conditions of Carriage and applicable laws, rules, and government regulations govern PAL's liability to you.

PHILIPPINE AIRLINES General Conditions of Carriage (PASSENGERS AND BAGGAGE)

## Section 2. LIMITS ON LIABILITY ON INTERNATIONAL CARRIAGE

Unless otherwise stated in these Conditions of Carriage, International Carriage, as defined in the Convention, is subject to the liability rules of the Convention.

## Section 3. LIABILITY FOR DAMAGE

Where your carriage is not subject to the liability rules of the Convention, our liability provisions are as follows:

(a) PAL will not be liable to you for any loss or expense incurred due to your failure to comply with any of the provisions of this Conditions of Carriage.

(b) PAL is not liable if it proves that it or any of its agents have taken all necessary measures to avoid the damage or that it was impossible for it to take such measure.

(c) In the carriage of Baggage, PAL is not liable if it proves that the damage was occasioned by negligence in the handling of the aircraft or in navigation and that, in all other respects, it has taken all necessary measures to avoid the damage.

(d) PAL assumes no liability for pre-existing damage, and damage as a result of normal wear and tear, such as minor cuts, scratches, and broken zippers.

(e) PAL is liable only for damage occurring on its own line or air services. When PAL issues a Ticket or Baggage Tag over the lines or air services of another carrier, PAL does so only as agent for such other carrier and assumes no responsibility for the acts or omissions of such other carrier. Nevertheless, with respect to Checked Baggage, you shall have a right of action against the first or last carrier.

(f) PAL is not liable for damage to Unchecked Baggage unless such damage is caused by the negligence of PAL. If there has been contributory negligence on your part, PAL's liability shall be subject to the applicable laws, rules, and government regulation relating to contributory negligence.

(g) PAL is not liable for damage arising from its compliance with any laws, rules, and government regulations, orders or requirements, or from your failure to comply with the same.

(h) If in accordance with applicable laws, rules, and government regulations, different limits of liability are applicable such different limits shall apply. If the weight of the Baggage is not recorded on the Baggage Tag, it is presumed that the total weight of the Checked Baggage does not exceed the applicable free baggage allowance for the class of service concerned. If in the case of Checked Baggage a higher value is declared pursuant to Article 8, Section 7, the liability of PAL shall be limited to such higher declared value.

(i) PAL's limit of liability shall not exceed the amount of proven damages. PAL shall furthermore not be liable for indirect or consequential damages.

(j) PAL is not liable for injury to you or for damage to your Baggage caused by property contained in your Baggage. In the event that your property causes injury to another person or damage to another person's property or to PAL's property, you shall indemnify PAL for all losses and expenses incurred by PAL as its result.

(k) PAL is not liable for loss or damage to fragile or perishable items, money, jewelry, precious metals, silverware, negotiable papers, securities, or other valuables, business documents, passports and other identification documents or samples. Carriage of the foregoing shall be allowed only under special arrangements with PAL.

(l) PAL is not liable for any consequence resulting solely from your state of health.

(m) The aggregate amount you may claim from PAL, including from Authorized Agents, employees, or representatives shall not exceed the limits of liability as prescribed in these Conditions of Carriage.

(n) Unless so expressly provided nothing herein contained shall waive any exclusion or limitation of liability of PAL under the Convention or applicable laws, rules, and government regulations.

(o) In the Domestic Carriage of persons, the limit of liability for death or injury of persons attributable solely to the act, omission or negligence of PAL and not due to any cause beyond its control, shall be governed by the relevant local law or regulation.

(p) In the Domestic Carriage of Checked Baggage, the limit of liability for loss, damage or delay of the Checked Baggage or of any object contained in the Baggage, attributable solely to the act, omission or negligence of PAL and not by any cause beyond its control, shall be governed by the relevant local law or regulation.

# ARTICLE 14 - DENIED BOARDING COMPENSATION

## Section 1. DENIED BOARDING

Subject to the exceptions provided under Section 2 of this Article, PAL shall compensate Passengers holding confirmed reservations and who have undergone all the prerequisite formalities for check-in, but were denied boarding due solely to unavailability of space, in accordance with applicable laws, rules, and government regulations.

## Section 2. EXCEPTIONS OF ELIGIBILITY

You shall not be eligible for denied boarding compensation if:

(a) the flight for which you hold confirmed reservations is unable to accommodate you because of: (1) government requisition of space; or (2) substitution of equipment of lesser capacity when required by operational and/or safety reasons and/or other causes beyond the control of PAL;

(b) the flight is cancelled due to operational and/or safety reasons, force majeure, weather, strikes, or other causes beyond the control of PAL; or

(c) PAL arranges for comparable air transportation or for other transportation which, at the time such arrangement is made, is scheduled to arrive at the place of your next Stopover, or place of his destination not later than three (3) hours from the scheduled arrival time on the flight where he holds a confirmed reservation.

## ARTICLE 15 - MODIFICATION AND WAIVER

No agent, employee or representative of PAL, by conduct, in writing or otherwise, has authority to alter, modify or waive any provision of these Conditions of Carriage and PAL's Tariffs

## ARTICLE 16 - TOP HEADINGS

The title of each Article of these Conditions is for convenience only, and is not to be used for interpretation of the text.

CLICK HERE TO DOWNLOAD A COPY OF PHILIPPINE AIRLINES GENERAL CONDITIONS OF CARRIAGE (PASSENGER AND BAGGAGE) (/web/20200918170313/https://www.philippineairlines.com/en/~/media/files/downloadableforms/pal_gcoc_final_24july2018.pdf?la=en)

Go Back to General Conditions of Carriage (/web/20200918170313/https://www.philippineairlines.com/AboutUs/LegalNotices/GeneralConditionsOfCarriage)